Eminent domain; taking; "inverse condemnation”; Wilderness Preservation legislation as legislative taking of subsurface mineral rights. — On June 20, 1980 the court entered the following order:
*698 Before Nichols, Judge, Presiding, Skelton, Senior Judge, and Smith, Judge.
This case is before the court on defendant’s motion, called a motion to dismiss, which we, by our order of March 21, 1980, determined to be a motion for summary judgment, 223 Ct.Cl. 674. The parties have been allowed to file material supporting and opposing the motion. On June 5, 1980, the present panel heard the oral argument the March 21,1980, order calls for.
The Congress by legislation effective January 3, 1975, Pub.L. No. 93-622, 88 Stat. 2096 (Eastern Wilderness Act) designated a certain tract in West Virginia as the Otter Creek Wilderness Area and made it a part of the National Wilderness Preservation System subject to the Wilderness Act of 1964, 16 U.S.C. §§ 1131 and ff. The plaintiff coal company claims ownership or former ownership of the right to mine coal under the said area, by reason of a predecessor having reserved such right when it conveyed the tract to the United States Forest Service in 1913. It agreed to conform to regulations of the Department of Agriculture then (1913) in effect whenever it mined coal. Plaintiff asserts that the enactments cited constitute a pure legislative taking of its subsurface mineral interests because of the impossibility, since 1975, that the Secretary of Agriculture could lawfully allow coal mining in or under the Wilderness Area. It bases its claim on the just compensation clause of fifth amendment and assigns our jurisdiction to 28 U.S.C. § 1491. The matter is important because an apparently valuable stratum of coal outcrops in and around the area. The Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201 and ff (Supp. II 1978), also has a bearing and defendant asserts or admits, as one prefers to put it, that the plaintiff would have to make its peace with the Secretaries of both Agriculture and Interior before it could mine coal, even in underground operations. Defendant would have us dismiss under the doctrine of primary jurisdiction.
Strictly speaking, the doctrine of primary jurisdiction does not apply to an instance of pure legislative taking, such as plaintiff says has occurred here. If, as plaintiff says, the Secretaries could not allow the mining here involved, *699 without exceeding their jurisdiction, application to them would be futile and is not required for enforcement of fifth amendment rights. Defendant, however, strenuously insists that a residuum of authority to allow mining may possibly remain, and the Secretaries cannot determine the extent of their own authority without having applications by plaintiff before them. Defendant insists it might be possible to mine under the Wilderness Area through outcrops that surface outside the area. Plaintiff points to geographic features that negate this. It is mountainous country. Access is limited. To get coal to the railroad it would have to be hauled right across the Wilderness Area, plaintiff says.
We have difficulty imagining that any now or future Secretaries of Agriculture and Interior will ever permit removal of the coal involved, and if they were willing, that the alert, zealous, and well financed environmental organizations could not and would not promptly obtain injunctions. There is, however, no language of express taking in the legislation. Government counsel insist their position is bona fide and not intended for delay. Plaintiff does not contend that the legislation takes all coal underlying all Wilderness Areas. It says a taking is effected only in the peculiar circumstances of this particular case. It would be hard to pass on the issue as to whether or not a taking has in reality occurred without speculating as to the Secretaries’ attitude. Far better than such speculation would it be to have their reaction to the specific case that is before us. How they construe the relevant statutes, is an important and necessary aid to us in arriving at our construction. The Supreme Court decision, rendered since oral argument before us, in Agins v. City of Tiburon, 447 U.S. 255 (1980), confirms our view that in the circumstances we cannot decide the taking issue without knowing the reaction of the Secretaries to a specific plan.
We are, however, concerned with the predicament of plaintiff, who appears to us to be positioned as one who can be dealt with at leisure, one who can be indefinitely prevented from using his property without ever being paid for the taking of it. Benenson v. United States, 212 Ct. Cl. 375, 548 F.2d 939 (1977); Drakes Bay Land Co. v. United States, 191 Ct. Cl. 389, 424 F.2d 574 (1970). If plaintiff is *700 right as to the legislative taking, the date of it was 1975 and the six-year statute of limitations will soon have run. For this reason, we are unwilling to dismiss for failure to exhaust administrative remedies and deem it would be unjust and inequitable to do so. We will retain jurisdiction of the case.
We direct the plaintiff to file applications with the Secretaries of Agriculture and Interior within 90 days from the date of this order, following the forms and procedures they have and may in future prescribe. We direct the two said Secretaries to join in providing procedures which are just and speedy, and avoid unnecessary expense, by which the issues before them can be determined, at least to the extent relevant for us. We direct them to determine in forthright fashion whether plaintiff is not to be allowed to mine coal, in which event its fifth amendment claim will be ripe for resolution, or is to be so allowed, on conditions to be prescribed by them and on their findings of feasibility. They may notify environmental organizations and allow them to participate as amici or intervenors. They are directed not to require, as preconditions for their rulings, applications by plaintiff to any of the no doubt large number of other Federal and State agencies that may have an interest, the conduct of costly and time consuming procedures such as preparation of environmental impact statements, or other preconditions we would probably regard as intended for delay. They will understand, we are sure, that we are inviting them to cooperate in forestalling another Drakes Bay or Benenson case before it happens. The decisions are to be rendered within one year after filing by plaintiff with the Secretaries and in case of any delay, inquiry will be made, and the party who has caused it may be deemed to have admitted the allegations of its adversary. Time will be extended only for convincing cause.
Until the above directed procedures are completed, further action in this court, including ruling on defendant’s motion to dismiss or for summary judgment, is suspended. Plaintiffs counsel is hereby designated to report to the court when the petitions to the Secretaries of Agriculture and Interior are filed, and the progress thereof each three months thereafter.
*701 IT IS SO ORDERED.