QUALITY ENVIRONMENT SYSTEMS, INC.

v.

The UNITED STATES.

No. 600–80C.

United States Claims Court.

Decided Feb. 21, 1985.

---

John C. Heath, Celina, Tenn., for plaintiff; Ted Price and John W. Jonap, Atlanta, Ga., of counsel.

Charles L. Schlumberger, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

MEROW, Judge.

This case comes before the court on cross-motions for summary judgment. Plaintiff seeks Wunderlich Act review, 41 U.S.C. § 321 et seq., of an Armed Services Board of Contract Appeals (ASBCA) decision, *QES, Inc.*, ASBCA No. 22178, 78-2 BCA ¶ 13,512 (1978). Reply briefs have been filed and oral argument has been held.

### Facts

The dispute involves a 1976 energy conservation system design contract between the Savannah District of the Corps of Engineers (District) and Quality Environment Systems, Inc. (QES). The contract was divided into phases. Phase I, the preliminary design, was to be submitted 109 days after contracting. Defendant then had 9 months to instruct QES whether to proceed with Phase II. The design was timely submitted in June 1976. In July 1976, at an on-board review, plaintiff met and discussed the plan with defendant. In September 1976 two major changes, P001 and P002, were made in the design. In October 1976 plaintiff requested a second design conference and a resume of negotiations for the changes. Plaintiff received no response and, in November 1976, made a

second submission. A meeting was held in December 1976 concerning the second submission. Subsequently, plaintiff submitted two additional design plans. In separate meetings, plaintiff was informed that each submission was deficient in some manner. In June 1977 plaintiff was default terminated.

Plaintiff appealed the default termination to the ASBCA. Plaintiff argued that its design satisfied the contract requirements, that, alternatively, defendant did not cooperate with plaintiff's efforts to satisfy government requirements, and that review of plaintiff's submissions was improper because the review panels did not include representatives of the user agency. The board determined plaintiff was properly default terminated. *QES, Inc.,* ASBCA No. 22178, 78–2 BCA ¶ 13,512 (1978).

In the present action, plaintiff seeks review of the board decision and seeks remand to the board for additional findings of fact on an issue of bad faith. In its initial summary judgment motion plaintiff alleges that the board's interpretation of the contractual provision regarding the availability of on-board review was not supported by substantial evidence. In a later submission, plaintiff largely abandons this argument. Instead, plaintiff contends that conflicting instructions rendered its performance impossible and the board should have so ruled. Plaintiff also disputes the validity of the board's ruling on the required percentage of completion of the design. Finally, plaintiff asserts the board made insufficient findings of fact concerning bad faith allegations. Defendant argues that plaintiff's allegations are insufficient to withstand Wunderlich Act scrutiny and that plaintiff has failed to exhaust its administrative remedies.

For the reasons stated below it is concluded that, while the board's decision as to the existence of a default is supported by substantial evidence, the case is remanded to the ASBCA for additional consideration of plaintiff's bad faith allegations.

*Discussion*

■ Under the applicable law, the board's decision shall be final and conclusive unless the same is fraudulent, capricious or arbitrary, or so grossly erroneous as to imply bad faith, or is not supported by substantial evidence. 41 U.S.C. § 321. Substantial evidence is evidence which could convince an unprejudiced mind of the truth of the facts to which the evidence is directed. *Koppers Co. v. United States,* 405 F.2d 554, 558, 186 Ct.Cl. 142, 149 (1968).

■ The plaintiff has the burden to specify the facts and circumstances contained in the board's record which render the board's decision lacking in finality. *Jet Construction Co. v. United States,* 531 F.2d 538, 540, 209 Ct.Cl. 200, 204 (1976); *Jefferson Construction Co. v. United States,* 368 F.2d 247, 252, 177 Ct.Cl. 581, 589 (1966). With the exception of plaintiff's allegations regarding bad faith and the so-called "on-board review" of its submissions, plaintiff has not alleged board error with sufficient specificity. Plaintiff merely references the board's findings. It does not allege or establish specific error. As such, plaintiff fails to meet its burden to maintain a Wunderlich Act review suit.

Plaintiff has also failed to establish a valid claim involving the on-board review requirements. In its initial summary judgment motion, plaintiff engages in a substantial discussion of the board's conclusions concerning the required on-board review. Plaintiff contends the on-board review was deficient in that the contract required representatives of the using agency, Fort Benning, as well as representatives of the agency in charge of contract performance, Savannah District, should have been present at the meeting.

■ Although "the interpretation of a contract is a question of law to be decided by the court, * * * if the interpretation of a contract by an agency or board on a question of law is considered to be correct by the court, the court may approve or adopt the decision of the agency or the

board on the question." *B.D. Click Co. v. United States,* 614 F.2d 748, 752, 222 Ct.Cl. 290, 297–98 (1980). The board, applying contract interpretation principles, found that on-board review required "a joint review of the design submitted by the contractor and government personnel who were cognizant of the matter and in a position to comment and give instruction authoritatively." *QES, Inc.,* ASBCA No. 22178, 78–2 BCA ¶ 13,512, 66,217 (1978). The board concluded that meetings between plaintiff's and District representatives after the first three submissions constituted compliance with the on-board review requirement. 78–2 BCA at 66,220–21. No valid reason has been presented to overturn the board's reasoned conclusion and it is considered correct.

### Bad Faith

Plaintiff maintains the board should have made specific factual findings on the issue of whether bad faith influenced the contracting officer's decision to default terminate plaintiff. The board stated only in a conclusionary fashion that it considered the bad faith allegations where relevant to contractual relief. 78–2 BCA at 66,222. However, no specific findings were made. In its brief, plaintiff sets forth a number of events which may indicate bad faith. These include a joint boat purchase with the military branch chief, at the chief's request. The boat's title was in the branch chief's name only. In addition, there are allegations concerning requests for plaintiff to invest in the branch chief's massage parlor or to use the branch chief's printing company. Other incidents which plaintiff contends bear on the issue of bad faith include the following: that there was an October 1976 meeting, the results of which plaintiff was not advised (Finding of Fact (FF) 42); that a completed review was not given to plaintiff for 30 days even though plaintiff's president met with Savannah three days after the review was completed

(FF 45 and 46); that no contract had been terminated for cause in the District in at least 12 years (FF 58); that the majority of defects cited by the government were minor (FF 72); that changes in P001 and P002 were of such magnitude that they required a predesign conference, but one was not held (FF 115 and 116); and that plaintiff was not told until January 1977 to include remote alarm printers in the design. (78–2 BCA at 66,219).

These factors require specific consideration as to whether the discretionary decision to default terminate was in any significant way tainted by some form of animus toward plaintiff rather than reached on the basis of the merits of the proven contract performance deficiencies.

[T]he default article does not *require* the government to terminate on finding a bare default but merely gives the procuring agency discretion to do so * * *. The existence of discretion is undeniable. The clause says that the Government *may* * * * terminate, not "shall" or "must." We have recognized that a decision to terminate for convenience is rooted in discretion * * * and though the factors the Government will wish to consider may be different when a default is involved there is no reason to read the default article, contrary to its literal terms and the accepted practice, as compelling termination.

*Schlesinger v. United States,* 390 F.2d 702, 707, 182 Ct.Cl. 571, 581 (1968). (Citations omitted.)

■ Based upon the careful citations given by the board, it is clear that sufficient deficiencies in plaintiff's submissions existed to justify a default termination. However, the prior activities of the military branch chief involving plaintiff constituted conduct contrary to the standards expected of a government employee. *See, e.g.,* 5 U.S.C.A. § 7301, Note "Code of Ethics for Government Service." [1] After plaintiff dis-

---

**1.** This is not to indicate that the contractor's conduct was blameless. Depending upon the circumstances, participation in a transaction akin to the boat purchase, instead of promptly protesting the request to an appropriate higher authority, can place a contract relationship at substantial risk. *See K & R Engineering Co. v.*

closed the events involved, the contract was default terminated. Apparently default determinations were rare events at this district. Plaintiff sufficiently raised an issue whether the discretionary decision to default was exercised, in the best interests of the government, on the merits of the performance deficiencies or, instead, for reasons of bad faith stemming from plaintiff's disclosures.

■ However, it appears that the board declined to rule on this issue. The decision reasons that the board lacked jurisdiction to do so in the absence of a contractual provision bringing the issue within the ambit of the disputes clause. 78–2 ASBCA at 66,221. The cases on which the board relied, *Vare Industries, Inc.*, ASBCA No. 10337, 67–2 BCA ¶ 6463 (1967) and *Physics International Co.*, ASBCA No. 17700, 77–2 BCA ¶ 12,612 (1977), involve alleged fraudulent conduct by the contractor against the government. The present case involves a question of an alleged bad faith termination decision by the government. The board has jurisdiction to make findings on this bad faith default termination decision issue. As our predecessor court has stated:

> We think that the wording of the default clause, as well as the practice of this court and of the boards of contract appeals, make it very clear that this dispute—which centers on the plaintiffs' claim that their default was justified by Government interference—is subject to administrative resolution. In the absence of a waiver by the parties of the

*United States*, 616 F.2d 469, 222 Ct.Cl. 340 (1980).

administrative processes, we have always treated such factual questions imbedded in termination-for-default controversies as within the scope of the "disputes" clause, and so have the administrative boards.

*Nager Electric Co. v. United States*, 396 F.2d 977, 978, 184 Ct.Cl. 390, 394 (1968). (Footnotes omitted.)

Were it determined that the default decision represented an abuse of discretion, the contractual remedy would be to convert the termination to one for the convenience of the government. As relief would then be available under the contract, the board has jurisdiction to resolve the issue.[2]

Because the board incorrectly concluded that it lacked jurisdiction to consider the bad faith allegations, the matter must be remanded so that the issue, as it relates to the discretionary decision to default, may be specifically considered and resolved.[3]

### Conclusion

For the above stated reasons, it is ORDERED:

(1) The matter is remanded to the Armed Services Board of Contract Appeals for whatever additional proceedings are there required to consider and specifically resolve whether, in the peculiar circumstances involved, the decision to terminate for default in any way constituted an abuse of discretion requiring the granting of convenience termination relief to plaintiff;

---

**2.** It is recognized that, in pre-Contract Disputes Act matters, a bad faith termination can also trigger a claim for "breach of contract" relief beyond the jurisdiction of the board. Thus, in *National Factors, Inc. v. United States*, 492 F.2d 1383, 204 Ct.Cl. 98 (1974), *after* obtaining available contractual relief in the form of a termination for convenience settlement, the contractor was permitted to seek additional "breach of contract" relief (*i.e.*, claimed lost profit) in a *de novo* court action. However, prior administrative findings of fact reached in determining the termination for convenience relief were afford-

ed collateral estoppel status in the ensuing court action. This approach obviated duplicative factual proceedings. In the instant matter, plaintiff must exhaust its available administrative relief by obtaining a board determination as to whether any relevant abuse of discretion was involved in the default termination decision at issue.

**3.** Given this result, it is not necessary at this time to consider defendant's position concerning plaintiff's asserted failure to exhaust administrative remedies. This position is addressed only to the contracting officer's separate quantum decision on certain delay relief granted by the board.

(2) Upon remand of this matter to the ASBCA as provided in (1), a final judgment shall be entered otherwise dismissing plaintiff's complaint;

(3) Should plaintiff not be satisfied with the final decision of the ASBCA which will ensue pursuant to (1), then, upon the filing of a motion under Rule 60(b)(6) not more than 30 days following the receipt by plaintiff of such final board decision, this litigation shall be reinstated on the docket of the court for further appropriate proceedings.