Ruth Z. AINSLEY

v.

The UNITED STATES.

No. 548–84L.

United States Claims Court.

July 2, 1985.

Nathaniel A. Barbera, Somerset, Pa., for plaintiff; Vincent J. Barbera, Somerset, Pa., of counsel.

David F. Shuey, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht II, for defendant.

## OPINION

LYDON, Judge:

Plaintiff has alleged in her amended complaint,[1] filed on February 28, 1985, that the combination of two Acts of Congress resulted in a taking of her property without just compensation in violation of the fifth amendment to the United States Constitution. The court has before it defendant's motion to dismiss plaintiff's amended complaint pursuant to RUSCC 12(b)(1) and 12(b)(4) and plaintiff's opposition thereto. In defendant's motion to dismiss it asserts that (1) defendant has not taken plaintiff's property and (2) plaintiff's claim is not ripe in that she has failed to exhaust her available administrative remedies. Plaintiff counters defendant's motion to dismiss by contending that administrative proceedings in this case, given the statutory and regulatory provisions, would not serve the purposes behind the rule requiring a claimant to exhaust her administrative remedies before proceeding to this court in that it is clear that the agency(s) would deny her application to utilize her property as she wishes. As to the taking issue itself, plaintiff maintains that the existence of a taking depends on the individual circumstances of each case and thus she is entitled to a trial on the matter. After reviewing the submissions of both parties, the relevant statutes and regulations, the pertinent case law, and after oral argument, the court concludes that defendant's motion to dismiss should be allowed without prejudice.

## I.

The following is a narrative of the basic facts in this case as presented by plaintiff to the court.[2]

On January 8, 1963, plaintiff's husband, George Ainsley, now deceased, purchased a tract of coal property from Frank and Sue Dulik. The tract is located in Springhill Township, Fayette County, Pennsylvania. The property purchased by plaintiff's husband included "[a]ll of the remaining and unmined Pittsburg or nine foot vein or seam of coal underlying all that certain tract of land [approximately 127 acres] * * *." After describing the 127-acre tract of land, the deed estimated that 40.43 acres of Pittsburgh coal remained.

In addition to purchasing the coal property, plaintiff's husband also purchased certain broad rights related to his potential mining operations which could affect the overlying lands. Those rights included:

TOGETHER with the right to mine, extract and remove the entire amount and body of said coal with all the rights and privileges necessary and useful in the mining, removing and manufacturing of said coal into coke or other products, without being required to provide or leave support for the overlying land and without being liable for any injury to the

---

**1.** Plaintiff filed her initial complaint in this case on October 25, 1984. In response to that complaint, defendant filed a motion to dismiss on January 23, 1985. Subsequently, on February 28, 1985, plaintiff filed her amended complaint now before the court with defendant's consent. The court then denied, without prejudice, defendant's initial motion to dismiss in an order dated March 12, 1985.

**2.** For the purpose of evaluating defendant's motion to dismiss for failure to state a claim upon which relief can be granted, the facts alleged by plaintiff in her petition are regarded as established. *Balboa Insurance Co. v. United States*, 3 Cl.Ct. 543, 544 n. 1 (1983); *Featheringill v. United States*, 217 Ct.Cl. 24, 26 (1978).

overlying land or the water or water courses therein or thereon or to any structures or other things whatsoever therein or thereon by reason of the mining and removing of said coal or the manufacturing the same into coke or other products at the works of the second party, her successors or assigns, wherever located or hereafter to be located.

TOGETHER with the righ [sic] to make and maintain tracks, roads and ways in and through said mines forever; for the transporting and draining of said coal and any other coal and for the transportation of supplies to and from other lands, with all the rights of ventilation for drainage of mines of this or other coal, and access to and egress from all mines or openings on the land hereby conveyed by means of electricity, steam, rail or other roads for men and materials and the transportation of the coal of the land hereby conveyed or other lands through the mines and openings and over said roads, generally freed and discharged from all servitude from the overlying land or anything therein or thereon.

Plaintiff's husband died on May 11, 1976 and willed all of his right, title and interest in the coal property and mining rights to plaintiff, his wife.

On November 10, 1978, by Pub.L. No. 95–625, Title V, Subtitle A, § 509, 92 Stat. 3509, 16 U.S.C.A. § 461 note (1985), the United States Congress authorized the Secretary of the Interior to establish the Friendship Hill National Historic Site. The site would be a part of the National Park System. The Act also appropriated the necessary funds to acquire the property for the park. Pursuant to the Act, defendant acquired certain properties on December 27, 1979, including the surface property which overlies plaintiff's coal property. This property was made a part of the Friendship Hill National Historic Site.

As a result of defendant's purchase of the land overlying plaintiff's coal property, and the placement of that land in the Friendship Hill National Historic Site, plaintiff contends that her coal property is now within the boundaries of the National Park System. As such, said coal property is subject to the prohibition on surface coal mining operations set out in the Surface Mining Control and Reclamation Act of 1977 (Surface Mining Act), 30 U.S.C. § 1201 *et seq.* (1982). Section 1272(e)(1) of Title 30 provides:

> After August 3, 1977, and subject to valid existing rights no surface coal mining operations except those which exist on August 3, 1977 shall be permitted—
>
> (1) on any lands within the boundaries of units in the National Park System * *.

Though any mining operations conducted by plaintiff would be underground, section 1291(28) of the Surface Mining Act defines surface mining broadly enough to encompass plaintiff's potential mining activities. Section 1291(28) states in relevant part:

> "surface coal mining operations" means—
>
> (A) activities conducted on the surface of lands in connection with a surface coal mine or subject to the requirements of section 1266 of this title surface operations and surface impacts incident to an underground coal mine, the products of which enter commerce or the operations of which directly or indirectly affect interstate commerce. * * *
>
> *      *      *      *      *      *
>
> (B) the areas upon which such activities occur or where such activities disturb the natural land surface. Such areas shall also include any adjacent land the use of which is incidental to any such activities, all lands affected by the construction of new roads or the improvement or use of existing roads to gain access to the site of such activities and for haulage, and excavations, workings, impoundments, dams, ventilation shafts, entryways, refuse banks, dumps, stockpiles, overburden piles, spoil banks, culm banks, tailings, holes or depressions, repair areas, storage areas, processing areas, shipping areas and other areas upon which are sited structures, facilities, or other property or materials on the sur-

face, resulting from or incident to such activities; * * *.

At the time of the passage of the Surface Mining Act and the creation of the Friendship Hill Historic Site, plaintiff maintains that neither any coal mining operations existed on her property nor had she applied for or obtained a permit for mining coal.

Plaintiff filed her complaint, as amended, in this court alleging that the two Acts passed by Congress, discussed above, act in concert to prohibit her from mining coal on her land which is the only beneficial use for her coal property. Plaintiff asserts defendant's acts reduced the value of her land to zero, which she maintains constitutes a taking of her land without just compensation in violation of the fifth amendment to the Constitution. Defendant responded to plaintiff's complaint with a motion to dismiss which the court will now address.

## II.

In its motion to dismiss, defendant first argues that the passage of the Act establishing Friendship Hill National Historic Site did not result in a taking of plaintiff's property. *Danforth v. United States,* 308 U.S. 271, 286, 60 S.Ct. 231, 237, 84 L.Ed. 240 (1939). Defendant points out that the Act placed no prohibitions upon the use of plaintiff's property. Defendant asserts that mere inclusion of land within the boundaries of a national park does not constitute a taking *per se. See Drakes Bay Land Co. v. United States,* 191 Ct.Cl. 389, 413, 424 F.2d 574, 587 (1970). Defendant also contends that the passage of the Act establishing the historic site evidenced no intent on the part of the United States to take plaintiff's property. *B. Amusement Co. v. United States,* 148 Ct.Cl. 337, 341, 180 F.Supp. 386, 389 (1960).

Defendant also argues in its motion to dismiss that the mere enactment of the Surface Mining Act did not constitute a taking. *See Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 295, 101 S.Ct. 2352, 2370, 69 L.Ed.2d 1 (1984). Defendant argues that the Surface Mining Act merely prohibits certain uses of

property which the legislation found injurious to the public. Such regulation, defendant asserts, does not constitute a taking. *See Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). Defendant points out that the United States Supreme Court has upheld legislation which limits the use of particular lands in order to promote the health, safety and welfare of the public even if such regulation greatly diminishes property values. *See, e.g., Nectow v. Cambridge,* 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928); *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

In reviewing defendant's first basis for its motion to dismiss, the court notes that plaintiff has not alleged that the passage of either the Act establishing the Friendship Hill Historic Site or the Surface Mining Act alone resulted in a taking of her coal property. Plaintiff instead has alleged that the combination of the two Acts (*see* 30 U.S.C. § 1272(e)(1)) resulted in a total prohibition of the use of her coal property which she contends is a taking of her property without just compensation. Though neither of the Acts alone may have resulted in a taking, an initial reading of the two Acts *together* indicates that there may be some merit to plaintiff's position. *See generally Foster v. United States,* 221 Ct.Cl. 412, 423–26, 607 F.2d 943, 949–51 (1979).

In any event, the court cannot conclude as a matter of law that plaintiff's allegation of a taking is so fatally defective that it must be dismissed based on defendant's initial argument regarding the two statutes at issue. The Supreme Court in *Hodel v. Virginia Surface Mining & Reclamation Ass'n, supra,* a case relied upon by defendant, stated:

"[T]his Court has generally 'been unable to develop any "set formula" for determining when "justice and fairness" require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons.' Rather, it has examined the 'taking' question by engaging in essentially

ad hoc, factual inquiries that have identified several factors—such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government action—that have particular significance," *Kaiser Aetna v. United States,* 444 U.S. 164, 175 [100 S.Ct. 383, 390, 62 L.Ed.2d 332] (1979) (citations omitted).

These "ad hoc, factual inquiries" must be conducted with respect to specific property, and the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances. [*Id,* 452 U.S. at 295, 101 S.Ct. at 2370].

Unlike the plaintiffs in *Hodel v. Virginia Surface Mining & Reclamation Ass'n, supra,* plaintiff in this case, has presented a concrete controversy concerning the application of the Surface Mining Act to a particular parcel of land. In that context, fact questions do exist in this case regarding whether a taking of plaintiff's property occurred as a result of the prohibition set out in 30 U.S.C. § 1272(e)(1). As a result, disposition of this case on a motion to dismiss based on defendant's legal argument regarding the pertinent statutory provisions would be most inappropriate. *See Yuba Goldfields, Inc. v. United States,* 723 F.2d 884, 887 (Fed.Cir.1983).[3]

One of the fact questions which must be resolved in this case is whether the exceptions to the prohibition in 30 U.S.C. § 1272(e)(1) apply. The exceptions to the prohibition against surface coal mining in section 1272(e) include: (1) the existence of mining operations on the site on August 3, 1977, and/or (2) the establishment of valid existing rights in plaintiff to mine her property. Plaintiff alleges that her coal property has never been mined and thus the first exception does not apply. The court notes that plaintiff's counsel stated at oral argu-

ment that plaintiff's husband may have mined the property in the 1960's but that the mine was soon abandoned and was not in existence as of August 3, 1977. Plaintiff also contends that she has no "valid existing rights" as defined in 30 C.F.R. § 761.5 (1979). The issue regarding whether the exceptions to the prohibition in 30 U.S.C. § 1272(e) apply leads into the second basis for defendant's motion to dismiss.

Defendant argues that plaintiff's claim is not ripe for judicial resolution because plaintiff has failed to exhaust her administrative remedies set out in the Surface Mining Act and regulations promulgated pursuant thereto regarding her right to mine her coal property. The Supreme Court addressed the issue of failure to exhaust administrative remedies in *Hodel v. Virginia Surface Mining & Reclamation Ass'n, supra.* In that case the plaintiffs in part were challenging the constitutionality of the restrictions in section 522(e) of the Surface Mining Act (30 U.S.C. § 1272(e)). In rejecting the plaintiffs' claim the Supreme Court, as one basis for its ruling, stated:

Moreover, appellees cannot at this juncture legitimately raise complaints in this Court about the manner in which the challenged provisions of the Act have been or will be applied in specific circumstances, or about their effect on particular coal mining operations. There is no indication in the record that appellees have availed themselves of the opportunities provided by the Act to obtain administrative relief by requesting either a variance from the approximate-original-contour requirement of § 515(d) or a waiver from the surface mining restrictions in § 522(e). If appellees were to seek administrative relief under these procedures, a mutually acceptable solution might well be reached with regard to

---

**3.** In denying defendant's motion to dismiss for failure to state a claim based on its legal argument that the two Congressional Acts did not constitute a taking, the court notes that such motions are viewed with *disfavor and should rarely be granted. Balboa Insurance Co. v. United States, supra,* 3 Cl.Ct. at 545. "A motion brought under Rule 12(b)(4) should be denied 'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* 3 Cl.Ct. at 545 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In this case, a definite fact question exists the resolution of which may entitle plaintiff to the relief she requests.

individual properties, thereby obviating any need to address the constitutional questions. The potential for such administrative solutions confirms the conclusion that the taking issue decided by the District Court simply is not ripe for judicial resolution. [*Id.*, 452 U.S. at 297, 101 S.Ct. at 2371] [footnotes omitted].

Defendant points out that the Surface Mining Act sets out a procedure for applying for a mining permit. 30 U.S.C. §§ 1256–1264. In addition, 30 C.F.R. § 761.4(a) provides in pertinent part:

(a) The Secretary shall—

(1) Determine whether any application for a permit for surface coal mining and reclamation operations on Federal lands must be denied limited or conditioned because operations on those lands are prohibited or limited by Section 522(e) of the Act (30 U.S.C. 1272(e) ) and this Part;

(2) Determine, based upon a showing by an applicant, whether an applicant for a permit covering Federal lands either—

(i) Had any valid existing rights on August 3, 1977; or

(ii) Was conducting an existing surface coal mining operation on those lands on August 3, 1977;

Defendant argues that these statutory and regulatory provisions provide plaintiff with an administrative venue to initially determine the facts regarding plaintiff's ability to mine her property. Defendant contends that in order to preserve the integrity of the administrative process, plaintiff first should be required to seek a decision from the agency regarding her right to mine her coal property. *See McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969).

In particular defendant contends that plaintiff failed to exhaust her administrative remedies, as provided for in the Act and the regulations, by not seeking an

agency determination on whether she had a "valid existing right" to mine her coal. In a similar case involving 30 U.S.C. § 1272(e), the Sixth Circuit Court of Appeals found a claim was not ripe for consideration by the district court. The circuit court stated: "Until an administrative disposition is made of this question, we will not know the nature of the restraint imposed by the government on plaintiff's mining operations." *Ramex Mining Corp. v. Watt*, 753 F.2d 521, 524 (6th Cir.1985). It may be possible for plaintiff to vindicate her rights at the administrative level, thus making court intervention unnecessary. *McKart v. United States, supra*, 395 U.S. at 195, 89 S.Ct. at 1663.

Plaintiff asserts, however, that under her reading of the Surface Mining Act neither of the exceptions to section 1272(e) apply to her and thus administrative proceedings in her case are not necessary at this time. In particular, plaintiff argues that she has no "valid existing rights" to mine her coal property as that provision is defined in the 1979 version of 30 C.F.R. § 761.5(a). Therefore, plaintiff asserts that it was unnecessary for her to seek an agency determination in her case.

The court finds that plaintiff should have initially sought an administrative determination and finds *Otter Creek Coal Co. v. United States*, 224 Ct.Cl. 697 (1980) and subsequent proceedings, 231 Ct.Cl. 878 (1982) controlling in that regard.[4] In *Otter Creek Coal Co. v. United States, supra*, the plaintiff alleged that defendant took its coal mining rights in the Otter Creek Wilderness Area by operation of the Surface Mining Act. The Court of Claims addressing the issue of primary jurisdiction stated:

Strictly speaking, the doctrine of primary jurisdiction does not apply to an instance of pure legislative taking, such as plaintiff says has occurred here. If,

---

**4.** Plaintiff attempts to distinguish *Otter Creek Coal Co. v. United States,* 224 Ct.Cl. 697 (1980) from this case on its facts. The court, however, finds *Otter Creek Coal Co.* to be entirely analogous to this case in every respect and rejects plaintiff's attempt to distinguish the case based on the date of the alleged taking in that case and

the fact that *Otter Creek Coal Co.* involved The Wilderness Act of 1964 and not specifically an Act establishing a portion of the National Park System. The court notes that 30 U.S.C. § 1272(e)(1) encompasses both lands in the National Park System and in the National Wilderness Preservation System.

as plaintiff says, the Secretaries could not allow the mining here involved, without exceeding their jurisdiction, application to them would be futile and is not required for enforcement of fifth amendment rights. Defendant, however, strenuously insists that a residuum of authority to allow mining may possibly remain, and the Secretaries cannot determine the extent of their own authority without having applications by plaintiff before them. Defendant insists it might be possible to mine under the Wilderness Area through outcrops that surface outside the area. Plaintiff points to geographic features that negate this. It is mountainous country. Access is limited. To get coal to the railroad it would have to be hauled right across the Wilderness Area, plaintiff says.

We have difficulty imagining that any now or future Secretaries of Agriculture and Interior will ever permit removal of the coal involved, and if they were willing, that the alert, zealous, and well financed environmental organizations could not and would not promptly obtain injunctions. There is, however, no language of express taking in the legislation. Government counsel insist their position is bona fide and not intended to delay. Plaintiff does not contend that the legislation takes all coal underlying all Wilderness Areas. It says a taking is effected only in the peculiar circumstances of this particular case. It would be hard to pass on the issue as to whether or not a taking has in reality occurred without speculating as to the Secretaries' attitude. Far better than such speculation would it be to have their reaction to the specific case that is before us. How they construe the relevant statutes, is an important and necessary aid to us in arriving at our construction. The Supreme Court decision, rendered since oral argument before us, in *Agins v. City of Tiburon*, 447 U.S. 255 [100 S.Ct. 2138, 65 L.Ed.2d 106] (1980), confirms our view that in the circumstances we cannot decide the taking issue without knowing the reaction of the Secretaries to a specific plan, [224 Ct.Cl. at 698–99].

The court then retained jurisdiction over the plaintiff's claim in *Otter Creek Coal Co.* but suspended proceedings until an administrative determination could be reached. *Id.* 224 Ct.Cl. at 699–700.

The plaintiff in *Otter Creek Coal Co.* subsequently requested the Court of Claims to lift its stay in the case pending an administrative determination. The plaintiff based its request to lift the stay on alleged negative responses from the agency though no final decision had been issued. In opposing the motion to have the stay lifted, defendant asserted that plaintiff had failed to seek a determination that it had "valid existing rights".

In addressing the plaintiff's failure to pursue its "valid existing rights" under the Surface Mining Act, the court noted that the Otter Creek Coal Co., like plaintiff in this case, admitted that it did not satisfy the requirements in 30 C.F.R. § 761.5 (1979). The plaintiff, therefore, concluded that it would be pointless to pursue the issue. 231 Ct.Cl. at 880–81. The Court of Claims, however, stated:

> [T]he current status of the regulatory definition of "valid existing rights" is very much up in the air. The regulations have been remanded as too restrictive in light of the congressional intent to avoid takings, *In re Permanent Surface Mining Regulation Litigation*, Civ. No. 79–1144 (D.D.C. Feb. 26, 1980), *aff'd* 653 F.2d 514, *cert. denied, sub nom. Peabody Coal Co. v. Watt*, 454 U.S. 822 [102 S.Ct. 106, 70 L.Ed.2d 93] (1981); *see also Virginia Surface Mining*, 452 U.S. at 296 n. 37 [101 S.Ct. at 2370 n. 37], and OSM has promulgated proposed changes in the definition. 47 Fed.Reg. 25279–82, 25296–97 (June 10, 1982). One or more of the three options proposed by OSM may well include plaintiff's situation. Thus, the existence of "valid existing rights" is hardly foreclosed to plaintiff. While plaintiff cannot be faulted for not pursuing its valid existing rights earlier, there is no reason not to pursue them

now. We therefore also concur in the trial judge's order along these lines. *Id.* 231 Ct.Cl. at 881].

In concluding that plaintiff should initially seek an agency determination in this case, this court agrees that the definition of "valid existing rights" is not cut and dried and thus plaintiff may possibly have such rights.[5] The court notes that how an agency ultimately construes a statute is an important aid to the court in arriving at its construction of said statute. *Otter Creek Coal Co. v. United States, supra,* 224 Ct.Cl. at 699. *See also Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). In addition, the "virtual statutory command" from Congress that defendant avoid takings as a result of the Surface Mining Act suggests that plaintiff may have a right to mine her coal property despite the prohibition in 30 U.S.C. § 1272(e)(1). *Otter Creek Coal Co. v. United States, supra,* 231 Ct.Cl. at 880 n.

2. *See also Hodel v. Virginia Surface Mining & Reclamation Ass'n, supra,* 452 U.S. at 296 n. 37, 101 S.Ct. at 2370 n. 37.

Another factor which weighs in favor of requiring plaintiff to initially seek an administrative determination in this case is that a review of plaintiff's claim by the agency will allow it to develop a "factual record or to exercise its discretion or apply its expertise." *McKart v. United States, supra,* 395 U.S. at 194, 89 S.Ct. 1662. The court notes that plaintiff in this case would, she implies, if allowed, conduct underground mining on her coal property. The plaintiff in *Otter Creek Coal Co.* was also in a position to possibly conduct the same type of mining. The court in that case noted the possibility that the plaintiff could conduct underground mining through outcrops which surfaced outside the Wilderness area. *Otter Creek Coal Co. v. United States, supra,* 224 Ct.Cl. at 699. It may be

---

5. The court notes that the definition of "valid existing rights" contained in the 1983 Code of Federal Regulations (C.F.R.) is much broader than the definition in the 1979 regulations. Section 761.5 of the 1979 regulations (30 C.F.R. § 761.5) provides in pertinent part:
   "For the purposes of this Part—
   "Valid existing rights means:
   "(a) Except for haul roads,
   "(1) Those property rights in existence on August 3, 1977, that were created by a legally binding conveyance, lease, deed, contract or other document which authorizes the applicant to produce coal by a surface coal mining operation; and
   "(2) The person proposing to conduct surface coal mining operations on such lands either
   "(i) Had been validly issued, on or before August 3, 1977, all State and Federal permits necessary to conduct such operations on those lands, or
   "(ii) Can demonstrate to the regulatory authority that the coal is both needed for, and immediately adjacent to, an on-going surface coal mining operation for which all permits were obtained prior to August 3, 1977.
   \* \* \* \* \* \*
   "(c) Interpretation of the terms of the document relied upon to establish valid existing rights shall be based upon the usage and custom at the time and place where it came into existence and upon a showing by the applicant that the parties to the document actually contemplated a right to conduct the same underground or surface mining activities for which the applicant claims a valid existing right;

"(d) 'Valid existing rights' does not mean mere expectation of a right to conduct surface coal mining operations or the right to conduct underground coal mining. Examples of rights which alone do not constitute valid existing rights include, but are not limited to, coal exploration permits or licenses, applications or bids for leases, or where a person has only applied for a State or Federal permit."
   The same regulatory provision in the 1983 version of title 30 of the C.F.R. states in pertinent part:
   "Valid existing rights means:
   "(a) Except for haul roads, that a person possesses valid existing rights for an area protected under section 522(e) of the Act on August 3, 1977, if the application of any of the prohibitions contained in that section to the property interest that existed on that date would effect a taking of the person's property which would entitle the person to just compensation under the Fifth and Fourteenth Amendments to the United States Constitution;"
   The 1983 definition of "valid existing rights" in 30 C.F.R. § 761.5 appears to be much broader, and if it is applicable, may warrant an agency determination that plaintiff may mine her property. Past history indicates that the definition of "valid existing rights" is still evolving. Therefore, the court believes that the agency should be given the opportunity in the first instance to apply the proper regulatory provision in determining plaintiff's right to mine.

that plaintiff could conduct similar mining operations in this case without disturbing the surface land which would otherwise be violative of the prohibition in 30 U.S.C. § 1272(e)(1). *See* 30 U.S.C. §§ 1266, 1291(28). Such a determination, the court believes, should be made in the first instance by the agency with the mining expertise.

The court, therefore, concludes that defendant (the Department of the Interior) should make the initial determination on whether plaintiff can mine her coal property, *i.e.*, whether she has any "valid existing rights" or whether she can mine her property in a manner which will not violate the Surface Mining Act. However, the court notes that if defendant denies plaintiff's application for a permit to mine her land, such a denial will not be conclusive of a taking claim. *See Burlington Northern R.R. Co. v. United States*, 752 F.2d 627, 630 (Fed.Cir.1985); *Otter Creek Coal Co. v. United States, supra*, 231 Ct.Cl. at 880. Defendant, if the matter returns to this court, will still be entitled to prove that there is a feasible way to mine coal within the restrictions of the statutory and regulatory provisions. *Id.* 231 Ct.Cl. at 880.

In addition to the Court of Claims' *Otter Creek Coal Co.* decisions, the court finds that the recent ruling of the Federal Circuit Court of Appeals in *Burlington Northern R.R. Co. v. United States, supra*, supports this court's decision to dismiss without prejudice plaintiff's complaint in the manner set out below. In *Burlington Northern R.R. Co.*, the plaintiff alleged that its coal reserves, which were within the boundaries of a national forest, had been taken as the result of the passage of the Surface Mining Act. The plaintiff claimed that 30 U.S.C. § 1272(e)(2)(B) prohibited it from mining its coal reserves and thus it was entitled to just compensation from the United States under the fifth amendment of the Constitution. The facts in *Burlington Northern R.R. Co.* are clearly analogous to those in the case at bar.

In upholding this court's dismissal without prejudice of the plaintiff's claim, the Federal Circuit held that the plaintiff had failed to exhaust its administrative remedies. *Id.*, 752 F.2d at 629–30. The plaintiff asserted that it had not sought a mining permit from the Secretary of the Interior because it felt such an act would be futile in that the plaintiff did not believe that it possessed any "valid existing rights". *Id.*, 752 F.2d at 629. The defendant argued that the plaintiff could bring itself within the "valid existing rights" exception to section 1272(e) and thus acquire a mining permit. *Id.* Finding the arguments of both parties regarding the Secretary's authority to issue a mining permit to the plaintiff to be cogent, the Federal Circuit stated:

> We find it unnecessary to discuss or evaluate those arguments, however, since we conclude that the question of statutory authority is one for the Secretary to decide in the first instance. We cannot unequivocally say, as Burlington contends, that the Secretary does not have the authority the government tells us he believes he possesses. [*Id.* ]

The Federal Circuit recognized the benefits arising from an agency determination prior to judicial interpretation of a statutory provision as well as the general deference given to the interpretation of an Act by the agency charged with administering it. *Id.* (citing *Udall v. Tallman, supra,* 380 U.S. at 16, 85 S.Ct. at 801). Finally, the court noted that an agency determination favorable to the plaintiff would obviate the need for the court to decide whether the Surface Mining Act resulted in a taking. *Id.* This court finds the *Burlington Northern R.R. Co.* ruling upholding the trial court's dismissal without prejudice to be entirely supportive of its conclusion that plaintiff in this case has failed to exhaust her administrative remedies.

However, the court will not dismiss plaintiff's complaint in this case in the same manner that this court did in *Burlington Northern R.R. Co. v. United States, supra*. Instead, the court finds it proper to dismiss plaintiff's claim in the manner utilized by this court in *Quality Environment Systems, Inc. v. United States*, 7

Cl.Ct. 428, 433 (1985). Such a dismissal is without prejudice and allows plaintiff to file a motion pursuant to RUSCC 60(b)(6) not more than 30 days after a final agency determination, requesting the reinstatement of this litigation on the docket of the court for further appropriate proceedings. However, the dismissal without prejudice of plaintiff's complaint is a final judgment at this time.

The circumstances in this case warrant the utilization of a dismissal like that utilized in *Quality Environment Systems, Inc. v. United States, supra.* The basis for this court's ruling requiring plaintiff to first seek an administrative determination regarding her mining rights is the concept of primary jurisdiction as opposed to the doctrine of "failure to exhaust administrative remedies". The United States Supreme Court explained the difference between the two concepts in *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956) as follows:

"Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. *General American Tank Car Corp. v. El Dorado Terminal Co.,* 308 U.S. 422, 433 [60 S.Ct. 325, 331, 84 L.Ed.2d 361].

Plaintiff's taking claim in this case is originally cognizable in this court. However, the court concludes that said claim cannot be resolved until an administrative decision is reached regarding plaintiff's "valid existing rights" and right to mine her property. These circumstances place this case within the "primary jurisdiction" doctrine.

Though the doctrine of primary jurisdiction and the rule requiring exhaustion of administrative remedies are both "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties", (*United States v. Western Pacific R.R. Co., supra,* 352 U.S. at 63, 77 S.Ct. at 164), one distinction that exists is generally when primary jurisdiction is applicable, judicial proceedings are suspended pending an administrative determination of the relevant issue(s). *Id.* 352 U.S. at 64, 77 S.Ct. at 165. Such a suspension of proceedings was utilized in *Otter Creek Coal Co. v. United States, supra,* 224 Ct.Cl. at 699–700. However, this court dismissed a similar claim without prejudice and said dismissal was affirmed by the Federal Circuit in *Burlington Northern R.R. Co. v. United States, supra.* Given these two decisions, the court finds a reasonable intermediate solution to be the dismissal of plaintiff's complaint without prejudice, but if plaintiff is not satisfied with the agency determination regarding her "valid existing rights" she may file a motion within 30 days of the agency decision pursuant to (RUSCC 60(b)(6) to reinstate this litigation for further proceedings. *See Quality Environment Systems, Inc. v. United States, supra,* 7 Cl.Ct. at 433.[6]

6. The court presumes, based on the representations of counsel at oral argument that plaintiff is interested in mining her property, that plaintiff will be satisfied with an agency determination that she does have "valid existing rights" and in that case she presumably will not move to reinstate this litigation.

Plaintiff's counsel at oral argument requested the court to suspend proceedings instead of dismissing plaintiff's complaint without prejudice and giving her the opportunity to move pursuant to RUSCC 60(b)(6) to reinstate her case after an unsatisfactory agency decision. Plaintiff's counsel based this request on his concerns regarding the possible running of the statute of limitations. Defendant, however, assured the court that it was defendant's position that the statute of limitations did not begin to run until an administrative determination regarding plaintiff's mining rights had been rendered. Given defendant's position regarding the potential statute of limitations problem and defend-

**404**

The court acknowledges the predicament in which plaintiff finds herself. She can be prevented indefinitely from utilizing her property for mining purposes without being compensated for a taking if the agency wheels grind slowly. *Otter Creek Coal Co. v. United States, supra,* 224 Ct.Cl. at 699 and cases cited therein. Given the court's concerns regarding potential delays, the court urges expedition by both plaintiff and defendant. A speedy determination is in the interest of all concerned.[7]

### III.

Based upon the above discussion, plaintiff's complaint is to be dismissed without prejudice. However, should plaintiff not be satisfied with the final administrative determination regarding her "valid existing rights" and right to mine her property then, upon the filing of an appropriate motion under RUSCC 60(b)(6), not more than 30 days following the receipt by plaintiff of such final agency decision, this litigation shall be reinstated on the docket of the court for further appropriate proceedings.

ant's position that plaintiff must first pursue her administrative remedies, the court perceives that plaintiff will have no future problem with the statute of limitations if the court dismisses her complaint in the manner discussed above.

7. The court hopes that the delays experienced at the agency level in *Otter Creek Coal Co. v. United States, supra,* will not occur in this case. The court believes that the delays experienced in *Otter Creek Coal Co.* were largely attributable to challenges to the validity of the "valid existing rights" definition contained in 30 C.F.R. § 761.-5. It appears that the disputes regarding this definition have been substantially settled and thus the agency proceedings in this case should move along quickly.