753 F.2d 521
 22 ERC 1420, 15 Envtl. L. Rep. 20,214
 RAMEX MINING CORPORATION (83-5299), Gabriel Energy
Corporation (83-5305), Plaintiffs-Appellants,
and
The Stearns Company (83-5299), Intervening Plaintiff-Appellant,
v.
James WATT, Secretary of Interior; Paul Reeves, Acting
Director; Andrew Bailey, Acting Director, Office of Surface
Mining Reclamation & Enforcement; David C. Short, Region
II, Office of Surface Mining Reclamation & Enforcement,
Defendants-Appellees.
 Nos. 83-5299, 83-5305.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 3, 1984.
Decided Jan. 29, 1985.
 
 Ben B. Fowler, argued, William H. Gorin, Stites & Harbison, Bruce F. Clark, Frankfort, Ky., for plaintiffs-appellants.
 Louis DeFalaise, U.S. Atty., Jane E. Graham, Asst. U.S. Atty., argued, Lexington, Ky., for defendants-appellees.
 Before STEWART, Associate Justice (Retired)*, ENGEL and MERRITT, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 In each of these two cases against the Secretary of the Interior, a coal mining company proposes to mine coal under the surface of land owned and maintained by the federal government as forest land. The mining company claims a valid royalty lease of the mineral estate from the successor in interest of the original owner who reserved the mineral estate when he sold the fee interest in the land to the government. Each case arises under the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. Secs. 1201-1328 (1983). In each, the coal mining company and the owners of the underlying royalty mineral interest seek from this Court a declaratory judgment that they are entitled to mine coal under the federal lands. In one case the coal underlies part of the Daniel Boone National Forest in Eastern Kentucky, and in the other case the land is part of the so-called "Redbird Purchase Unit" near the Daniel Boone National Forest. Plaintiffs do not seek injunctive relief or damages.[1]
 
 
 2
 The 1977 Act applies to mining on both public and private lands, but the questions of interpretation and application of the Act presented by plaintiffs here relate to one of the provisions applicable only to public lands, namely Sec. 522(e)(2), codified as 30 U.S.C. Sec. 1272(e)(2). That section provides, with certain exceptions which we need not enumerate here, that "subject to valid existing rights," no coal mining which disturbs the surface "shall be permitted ... on any federal lands within the boundaries of any national forest...."[2]
 
 
 3
 Plaintiffs request a declaratory judgment holding that section 1272(e)(2) is not applicable to the mines they intend to operate and hence that the Office of Surface Mining which administers the Act may not apply and enforce this section against them. They argue that section 1272(e)(2) does not regulate their proposed mines for the following reasons: (1) section 1272(e)(2) does not cover separate mineral interests owned by private parties under federal forests but covers only surface interests; (2) unless the section is read to exclude such private mineral estates, the section constitutes an unconstitutional taking under the Fifth Amendment; (3) the mineral estate underlying the government-owned "Redbird Purchase Unit" is not covered by section 1272(e)(2) because Redbird is not a national forest.
 
 
 4
 When the Office of Surface Mining learned that the two mining companies were about to conduct underground mining operations which would disturb the surface of federal lands, the administrator gave notice that the companies are required to seek and obtain permits under the Surface Mining Reclamation Act and would be subject to the provisions of section 1272(e)(2). When plaintiffs received these notices, they filed this action for declaratory judgment in District Court rather than participate in the administrative hearing process established by the Act. The Act prohibits the mining of coal without an administrative permit, 30 U.S.C. Sec. 1256, and provides for administrative review and adjudication of disputes arising from permit applications. 30 U.S.C. Sec. 1264.
 
 
 5
 The District Court overruled in part the government's motion to dismiss the complaints on grounds that plaintiffs had not exhausted their administrative remedies and that their cases were not ripe for decision. Instead, the Court rendered a partial declaratory judgment construing and applying the statute. It held that the companies' mineral interests and mining operations would operate under and on federal forest lands, and were therefore governed by section 1272(e)(2) of the Act. The District Court then agreed with the government's position regarding ripeness, and ruled that it would defer to the agency's primary jurisdiction regarding plaintiffs' further claims. However, upon motion filed by the plaintiffs, the District Court dismissed the cases in their entirety so that plaintiffs could appeal from the declaratory judgment. On appeal, the government has formally waived any exhaustion and ripeness contentions to the extent that they might be interpreted to interfere with the District Court's limited declaration, and asserts that the judgment is now ripe for decision by this Court.
 
 
 6
 Plaintiffs' first argument is that the Act, and specifically section 1272(e), does not apply to them at all, because their proposed mining operations will not occur "on federal lands." Their theory is that they still own the "lands" beneath the surface, and although the federal government has been granted some rights on the surface, the lands affected by plaintiffs' mining, including the surface land necessarily disturbed by their underground mines, are wholly owned by the private plaintiffs as a matter of state law. Proceeding from this premise, plaintiffs then claim that they cannot be made to resort to the administrative procedure that the Office of Surface Mining has set up for determination of "valid existing rights," because that process necessarily assumes that the plaintiffs' operations will occur "on federal lands."
 
 
 7
 Plaintiffs' proposal to mine beneath federal national forest lands, with the conceded attendant effects on the surface of those lands, fits squarely within the common sense meaning of the phrase "on federal lands" as used in section 1272(e)(2). This is even more apparent when the definition of "surface mining" contained in the Act, i.e., "surface impacts incident to an underground mine," is substituted for the phrase "surface mining" in section 1272(e). Thus, the Act and section 1272(e) apply to plaintiffs' mines. The District Court was correct in so holding.
 
 
 8
 The plaintiffs' "taking" argument is governed by the Supreme Court's decision in Hodel v. Virginia Surface Mining and Reclamation, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), a pre-enforcement challenge to the Surface Mining Act. The Court held that the Act is not facially invalid. Its "mere enactment" does not constitute a taking of plaintiffs' mineral estate. Thus, the Court upheld the Act against the same type of attack under the Fifth Amendment as plaintiffs make in the instant case.
 
 
 9
 The Supreme Court observed that "the Act does not, on its face, prevent beneficial use of coal-bearing lands," and the coal companies "cannot at this juncture legitimately raise complaints in this Court about the manner in which the challenged provisions of the Act have been or will be applied in specific circumstances" because "there is no indication in the record that appellees have availed themselves of the opportunities provided by the Act to obtain administrative review." 452 U.S. 296-97, 101 S.Ct. 2370-71. The Court explains the hypothetical nature of the "taking" claims before it--"if appellees were to seek administrative relief under these procedures, a mutually acceptable solution might well be reached"--and concludes that "the potential for such administrative solutions confirms the conclusion that the taking issue decided by the District Court simply is not ripe for judicial resolution." Id. at 297, 101 S.Ct. at 2371 (footnote omitted). The same reasoning applies in this case. The Office of Surface Mining has not yet ruled on the questions of plaintiffs' "valid existing right" to engage in underground coal mining under section 1272(e)(2). Until an administrative disposition is made of this question, we will not know the nature of the restraint imposed by the government on plaintiffs' mining operations. Thus the District Court correctly ruled that plaintiffs' takings claim was not ripe for adjudication, and deferred to the agency's jurisdiction.
 
 
 10
 We agree with the District Court that lands within the Redbird Purchase Unit are "national forest" lands within the meaning of section 1272(e)(2). "National forest" land, primarily in the west, has been set aside for many years by the President from land in the public domain under section 24 of the Creative Act of 1891, 16 U.S.C. Sec. 471. See United States v. New Mexico, 438 U.S. 696, 705, 98 S.Ct. 3012, 3016, 57 L.Ed.2d 1052 (1978). "National forest" land within the meaning of section 1272(e) has also been acquired, primarily in the eastern section of the United States, under section 11 of the Weeks Law of 1911, 16 U.S.C. Sec. 521, which provides that land so acquired "shall be permanently reserved, held and administered as national forest land" just as are the western lands set aside by the President under the Creative Act of 1891. Land acquired as forest land under the Weeks Act, as distinguished from land set aside under the Creative Act of 1891, need not be formally set aside and proclaimed as national forest by the President. The acquisition of the land by the United States under the authority of the Weeks Act is sufficient to designate it as "national forest."
 
 
 11
 The "Redbird" Forest in question here is a so-called "purchase unit" acquired, held and administered as "national forest" land under the Weeks Act. The District Court was therefore correct in holding that section 1272(e) regulating coal mining in national forests governs lands within the Redbird Purchase Unit.
 
 
 12
 Accordingly, the judgment of the District Court is affirmed. Further relief not inconsistent with this opinion must be sought as an initial matter from the Secretary.
 
 
 
 *
 The Honorable Potter Stewart, Associate Justice (Retired) of the United States Supreme Court, sitting by designation
 
 
 [1]
 Plaintiffs originally sought an injunction prohibiting the Secretary from interfering with their mining operations, but have not pursued this remedy. Similarly, although plaintiffs have made a Fifth Amendment takings argument, they have not sought damages at this juncture
 
 
 [2]
 Section 1272(e) reads as follows:
 After August 3, 1977, and subject to valid existing rights, no surface coal mining operations except those which exist on August 3, 1977, shall be permitted--
 (1) On any lands within the boundaries of units of the National Park System, the National Wildlife Refuge System, the National System of Trails, the National Wilderness Preservation System, the Wild and Scenic Rivers System ...;
 (2) On any federal lands within the boundaries of any national forest: provided, however, That surface coal mining operations may be permitted on such lands if the Secretary finds that there are no significant recreational, timber, economic, or other values which may be incompatible with surface mining operations and--
 (A) Surface operations and impacts are incidental to an underground coal mine;
 ....