MERIDIAN LAND AND MINERAL COMPANY, and Burlington Northern Railroad Company, Plaintiffs–Appellees,

v.

Donald Paul HODEL, James R. Harris, and U.S. Department of the Interior, Defendants–Appellants.

Theodore FLETCHER, et al., Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

Nos. 85–4385, 85–4405.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 1986.

Decided March 25, 1988.

---

Jacques B. Gelin, Land and Natural Resources Div., Washington, D.C., for defendants-appellants.

William A. Gould, Perkins Coie, Seattle, Wash., for plaintiff-appellee Meridian.

Michael G. Moses, Billings, Mont., for plaintiff-appellee Fletcher.

Before BROWNING, Chief Judge, and WRIGHT and BOOCHEVER, Circuit Judges.

JAMES R. BROWNING, Chief Judge:

Meridian Land and Mineral Company and Burlington Northern Railroad Company ("Meridian") and Theodore Fletcher own coal underlying surface lands in Custer National Forest (Custer) which they allege can only be recovered by use of surface mining methods. They sought a declaratory judgment that the "Custer Proviso" in section 522(e)(2)(B) of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201 *et seq.* (1982), imposed an absolute ban on all surface coal mining operations within the boundaries of Custer National Forest. The Secretary of Interior contended the Custer Proviso negated only the exception to the ban on surface mining stated in the paragraph in which the Proviso appeared, and left unaffected the exceptions implicit in the provision that the ban on surface mining was "subject to valid existing rights" and was applicable only to "Federal lands" (and hence not to private property) within Custer National Forest.[1] The district court construed the Custer Proviso as an absolute bar to surface mining in Custer National Forest. We reverse.

I

Meridian first filed a claim for just compensation in the United States Claims Court alleging the "Custer Proviso" barred exploration and use of Meridian's coal deposits in Custer and thereby effected a taking of its property. The Claims Court dismissed without prejudice and the Court of Appeals for the Federal Circuit affirmed. *See Burlington Northern Rail-*

---

1. Section 522(e), codified at 30 U.S.C. § 1272(e), provides in relevant part as follows, with key phrases italicized:

> After August 3, 1977, and subject to valid existing rights no surface coal mining operations except those which exist on August 3, 1977, shall be permitted—
>
> . . . . .
>
> (2) on any *Federal lands* within the boundaries of any national forest: *Provided, however,* That surface coal mining operations may be permitted on such lands if the Secretary finds that there are no significant recreational, timber, economic, or other values which may be incompatible with such surface mining operations and—
>
> (A) surface operations and impacts are incident to an underground coal mine; or
>
> (B) where the Secretary of Agriculture determines, with respect to lands which do not have significant forest cover within those national forests west of the 100th meridian, that surface mining is in compliance with the Multiple–Use Sustained–Yield Act of 1960 [16 U.S.C.A. §§ 528–531], the Federal Coal Leasing Amendments Act of 1975, the National Forest Management Act of 1976, and the provisions of this chapter: *And provided further, That no surface coal mining operations may be permitted within the boundaries of the Custer National Forest.*

road Co. v. United States, 752 F.2d 627, 630 (Fed.Cir.1985). Relying primarily upon Hodel v. Virginia Surface Mining & Reclamation Assoc., 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), the Court of Appeals held Meridian's claim for just compensation was premature because Meridian had not sought a permit for surface mining from the Secretary of the Interior. While Meridian's appeal to the Federal Circuit was pending, Meridian filed this declaratory judgment action in the court below.

Fletcher filed suit in the court below seeking both a declaration that section 1272(e)(2)(B) barred surface mining for coal in Custer and just compensation for the taking. The district court transferred the action to the Claims Court which dismissed the claim for compensation as premature and returned the claim for declaratory judgment to the district court. The two declaratory judgment actions were then consolidated in the district court.

The government argues the claims for declaratory judgment should have been dismissed by the district court for the same reasons the claims for just compensation were dismissed in the Claims Court: lack of ripeness and failure to exhaust administrative remedies.[2]

As the Supreme Court explained in Virginia Surface Mining, unless the " 'mere enactment' of the Surface Mining Act has deprived appellees of economically viable use of their property"—a possibility the Court rejected—whether there has been a "taking" requiring compensation depends upon the nature of the governmental action and its effect upon the specific property. Id. at 295–97, 101 S.Ct. at 2370–71. These factors cannot be evaluated until the administrative process has been completed. Id. at 297, 101 S.Ct. at 2371; Williamson Co. Regional Planning Comm. v. Hamilton Bank, 473 U.S. 172, 191, 105 S.Ct. 3108, 3119, 87 L.Ed.2d 126 (1985). Moreover, the administrative process might lead to an accommodation that would avoid the constitutional issue entirely. Virginia Surface Mining, 452 U.S. at 297, 101 S.Ct. at 2371. For these reasons, until the administrative process is completed, the taking issue "simply is not ripe for judicial resolution." Id.; Williamson Co., 473 U.S. at 190–91, 105 S.Ct. at 3119–20; Ramex Mining Corp. v. Watt, 753 F.2d 521, 523 (6th Cir.), cert. denied, 474 U.S. 900, 106 S.Ct. 271, 88 L.Ed.2d 225 (1985).

■ The difference between such taking claims and the claims remaining in these cases is clear. Appellees seek only a declaration that the Custer Proviso bars all surface coal mining in Custer National Forest. That question is purely one of statutory construction. No "ad hoc, factual inquiries," Virginia Surface Mining, 452 U.S. at 295, 101 S.Ct. at 2370, regarding the particular property owned by appellees are required—or would be relevant. In such circumstances, even a constitutional challenge could be decided without further administrative proceedings—indeed, just such a challenge (whether section 1272(e), on its face, effected a "taking") was resolved in Virginia Surface Mining, 452 U.S. at 296 n. 37, 101 S.Ct. at 2370 n. 37. See also Ramex, 753 F.2d at 524.

The issue presented here is ripe for decision under established standards. Appellees own coal deposits within Custer National Forest which can be exploited only by surface mining. Doubt as to whether the Custer Proviso bars such mining impairs appellees ability to either alienate the property or develop it. The issue raised is purely legal. It is definite and concrete. Delay will impose an economic burden upon appellees. See Assiniboine and Sioux Tribes v. Board of Oil and Gas Conservation, 792 F.2d 782, 787–90 (9th Cir.1986).

The policies underlying the exhaustion requirement would not be served by requiring exhaustion in these cases: there was no

---

2. The government also argues that Meridian and Fletcher are collaterally estopped by the decisions of the Claims Court from re-litigating the ripeness and exhaustion issues. The government waived this affirmative defense by failing to plead it in the trial court as required by Fed.R.Civ.P. 8(c). See Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed. 2d 788 (1971); Harbeson v. Parke Davis, Inc., 746 F.2d 517, 520 (9th Cir.1984).

premature interference with an agency process; there was no administrative decision the agency could have corrected; no factual development was required; and the court had the benefit of the agency's view of the meaning of the statute. *See Assiniboine and Sioux Tribes,* 792 F.2d at 791. Moreover, the ultimate task of statutory interpretation involves judicial rather than administrative expertise. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984); *Southern California Edison Co. v. F.E.R.C.,* 770 F.2d 779, 782 (9th Cir.1985).

We conclude that the district court did not abuse its discretion, *see Assiniboine,* 792 F.2d at 790, by interpreting the statute without first requiring appellees to apply for a surface mining permit under 30 U.S.C. §§ 1256 and 1257, or for an agency determination that they possessed "valid existing rights."

## II

Subject to valid existing rights, section 1272(e)(2) prohibits surface coal mining operations on federal lands in any national forest unless the Secretary of Interior finds there are no values incompatible with surface mining and either (A) surface impacts are incident to an underground coal mine, or (B) the Secretary of Agriculture determines, with respect to unforested lands west of the 100th meridian, that surface mining complies with this Act and three listed federal statutes regulating the management of federal lands, *"[a]nd provided further,* [t]hat no surface coal mining operations may be permitted within the boundaries of the Custer National Forest."

The district court held the quoted words plainly ban all strip coal mining in Custer National Forest; that the plain meaning is conclusive absent a clearly expressed legislative intention to the contrary, *Lynch v. Rank,* 747 F.2d 528, 532 (9th Cir.1984), *amended,* 763 F.2d 1098 (1985); and that the legislative history of the Proviso is at best "contradictory and inconclusive." We think, to the contrary, that the statutory setting of the words strongly suggests they apply only to the exception to the ban on strip mining on federal lands in national forests stated in the same paragraph (B) of the section. We think that this interpretation is supported by the legislative history.

The two exceptions to the ban on surface mining which would be applicable to Custer National Forest if the government were correct, but would be inapplicable if the district court were correct, are (1) the exception for "valid existing rights" stated in the opening lines of subsection 1272(e), and (2) the exception for private lands implied from the express limitations of subsection 1272(e)(2) to "any *Federal* lands." The government reads the first sentence of subsection 1272(e) to subject the entire subsection, including the Custer Proviso, to the "valid existing rights" exception; appellees respond that the Proviso bans all mining in Custer regardless of the existence of valid existing rights. The government contends the Custer Proviso only prohibits mining on federal lands within Custer and does not affect private in holdings. Appellees respond that the language of the statute as a whole indicates the Custer Proviso applies to private as well as federal lands, emphasizing the Act's use of the labels "Federal" or "private" where a limited effect was to be accorded certain provisions and use of the terms "all" and "any," or the lack of any specific designation, when a provision was intended to apply to both Federal and private lands.

The placement of the Proviso as the last clause of subsection (B) suggests that its only purpose is to negate the exception to the ban on surface mining stated in subsection (B). The legislative history confirms this reading.

The exception and the Proviso now found in paragraph (B) of subsection (e)(2) came into the statute together. The predecessor to the bill enacted in 1977, H.R. 25, 94th Cong., 1st Sess. (1975), contained a broad prohibition of surface coal mining "on any federal lands within the boundaries of any national forest" unless incident to the operation of an underground mine. H.R.Conf. Rep. No. 189, 94th Cong., 1st Sess. 56

(1975). This bill did not contain a Custer Proviso. None was needed. The broad ban in H.R. 25 protected federal lands from strip mining in Custer National Forest just as it did in all other national forests.

Congressman McKay of Utah offered an amendment substituting the following language for the language quoted above:

> on any Federal lands within the boundaries of any national forest east of the one-hundredth meridian or on any lands within the boundaries of any national forest which, on the date of the enactment of this Act, are managed and utilized primarily for outdoor recreation or for sustained yield timber production....

121 Cong.Rec. 7049 (1975). Congressman McKay explained that he wished to allow strip mining of coal on federal lands in national forests that were unsuited to lumbering or recreation. *Id.* The McKay amendment was rejected. During the debate, Congressman Melcher of Montana, who opposed the amendment, pointed out that the nation's need for coal could be met not only from federal lands outside the national forests, *id,* but also from private lands within national forests, including Custer National Forest, since the ban on surface mining applied only to federal land within these forests. *Id.* at 7050. Mr. Melcher stated he would vote against the McKay amendment for the additional reason that limiting the ban on strip mining to lands "managed and utilized primarily for outdoor recreation or for sustained yield timber production," as proposed, would not provide "an adequate guideline for Congress to establish what national forests would not be strip mined for coal." *Id.* In the course of the exchange, Mr. McKay stated that if the restriction he proposed were adopted he "would be willing ... [to] tighten [the amendment] down to eliminate Custer National Forest."

When the bill was reintroduced during the 95th Congress, the general ban on strip mining on federal lands in national forests was retained, but was redrafted to provide an exception permitting strip mining on lands west of the 100th meridian that had no significant recreational or timber values and lacked significant forest cover. This exception closely followed Mr. McKay's proposal in the 94th Congress. The bill also included, for the first time, the Proviso retaining the surface mining ban in Custer National Forest.

In sum, during the debate in the 94th Congress Mr. McKay suggested the substance of what later became the Custer Proviso in direct response to Mr. Melcher's objection to the generality of Mr. McKay's exception, which itself evolved into the exception now stated in subparagraph (B). Thus, the legislative history supports the conclusion suggested by the structure of the statute: the Custer Proviso banning surface mining in Custer National Forest is linked to the specific exception to the ban on strip mining on federal lands in national forests stated in the same paragraph (B).

The linkage between the exception and Proviso suggested by their common origin is consistent with other references to the Custer Proviso in the legislative history. In the course of the 1977 debate on the present version of the Act, Mr. McKay stated he had worked with the committee chairman "to achieve an accommodation" on this matter, and then summarized the pertinent provisions of subsection 1272(e)(2), including paragraph (B) and the Custer Proviso, as an integrated whole.[3]

---

**3.** Congressman McKay said:

There are some 7 billion tons of potentially surface minable coal within the boundaries of the national forest system. The present language of H.R. 2 does not allow mining of all this coal but only so much as can be mined within carefully worded guidelines and restrictions.

The starting point of the committee language is the exclusion of all surface coal mining within the national forest system. Exceptions to this no strip-mining policy are allowed only when the following prerequisites occur:

First, the lands must be situated west of the 100th meridian or the Mississippi.

Second, the land must not have significant forest cover.

Third, there can be no significant recreational, timber, economic, or other values which may be incompatible with the surface mining operations, as such values are determined by the Secretary of the Interior.

The same is true of the summaries of this section in both the House [4] and Senate Reports.[5] The Conference Report makes the linkage between the Custer Proviso and the exception stated in paragraph (B) particularly clear. In an unmistakable reference to subparagraph (e)(2)—the only provision relating to national forests—the Conference Report describes this provision as "barring strip mining *in national forests* with *limited exceptions*," and the report continues (referring to the Proviso), *"such exceptions* are not applicable to the Custer National Forest." [6]   H.R.Conf.Rep. No. 493, 95th Cong. 1st Sess. 111, *reprinted in* 1977 U.S.Code Cong. & Admin.News 728, 742 (emphasis added).

The House and Senate Reports also make the converse clear; that is, the exception to the ban on surface mining for valid existing rights and for private lands in national forests *are* applicable to Custer National Forest despite the Custer Proviso. The House Report states without qualification that subsection (e)(2)'s ban on surface mining in national forests does not preclude surface mining on *private lands*

---

4. The House Report's summary reads:

The committee amendment includes an exception to H.R. 2's prohibition of coal strip mining in national forests. Under the committee amendment, surface coal mining operations *may be permitted on national forests* lands without significant forest cover west of the 100th meridian if the Secretary determines there are not other specified values incompatible with surface mining and the Secretary of Agriculture determines that surface mining is in compliance with certain specified laws. Surface operations and impacts incident to underground coal mines are permitted. Surface mining is prohibited within the boundaries of the Custer National Forest.

H.R.Rep. No. 218, 95th Cong., 1st Sess. 69, *reprinted in* 1977 U.S.Code Cong. & Admin.News 593, 607.

5. The Senate Committee Report reads:

The prohibition against strip mining in the National forests is not to apply to those lands with no significant forest cover west of the 100th meridian where the Secretary of Agriculture and the Secretary of Interior have found there are not significant surface values relative to the value of the coal to be mined. The prohibition would, however, apply to Custer National Forest and to Alaska national forests.

S.Rep. No. 128, 95th Cong., 1st Sess. 94–95 (1977).

6. The Conference Committee Report reads:

Both the Senate amendment and the House bill contained similar provisions *barring strip mining in national forests with limited exceptions*. The House bill provides that *such exceptions were not applicable to the Custer National Forest,* while the Senate amendment extended this limitation to all national forests in Alaska. The Senate receded so that the conference report *does not ban the application of the exceptions* to the general prohibition on mining to national forests in Alaska.

H.R.Conf.Rep. No. 493, 95th Cong., 1st Sess. 111, *reprinted in* 1977 U.S.Code Cong. & Admin. News 728, 742 (emphasis added); *see also* S.Conf.Rep. No. 337, 95th Cong., 1st Sess. 111 (1977).

The use of the plural ("exceptions") suggests the Proviso may also ban the exception stated in subparagraph (A), *i.e.,* surface operations and impacts incident to an underground coal mine. The parties have not discussed this possible extension of the Proviso to the exception stated in (A) and we *do not consider it here.*

---

Fourth, the Secretary of Agriculture must determine that such surface mining is in compliance with:
First.  The Multiple–Use Sustained–Yield Act of 1960 and its regulations;
Second.  The Federal Coal Leasing Amendments Act of 1975 which requires preparation of land management plans; and
Third.  The National Forest Management Act of 1976 as it requires that land management plans comply with the National Environmental Policy Act of 1969.
Lastly, the bill entirely disallows surface mining operations within the boundaries of the beautiful and coal rich Custer National Forest.
In my opinion Mr. Speaker, the present language of section 522 is a well-thought-out, carefully worded compromise of the several interests involved with surface mining in the national forests.

123 Cong.Rec. 12,647. Appellees cite the unqualified language of the concluding paragraph of Mr. McKay's summary ("Lastly, the bill entirely disallows ...," etc.) as evidence that the Custer Proviso is a complete, independent, and free-standing ban on surface mining in the Custer National Forest. However, the context demonstrates that Congressman McKay was limiting the discussion to *public lands within the forest* as opposed to private lands. That is the most plausible explanation for his statement that, "The starting point of the committee language is the exclusion of all surface coal mining within the national forest system," even though the Act clearly excepts valid existing rights from the general prohibition and applies solely to federal lands within the boundaries of national forests.

within such forests.[7] The Senate Report states flatly that *"all"* of the bans on surface mining "in subsection (e) are subject to valid existing rights."[8] The same view was expressed by the Supreme Court in *Hodel v. Virginia Surface Mining and Reclamation Assn.,* 452 U.S. 264, 294 n. 36, 296 n. 37, 101 S.Ct. 2352, 2369 n. 36, 2370 n. 37, 69 L.Ed.2d 1 (1981).[9]

Appellees argue that this reading of the statute renders the Proviso surplusage—but clearly it does not. Absent the Proviso, the Secretary of Interior could authorize surface mining in Custer National Forest when the conditions of paragraph (B) were satisfied; with the Proviso he cannot.

Appellees argue that a broad reading of the Custer Proviso to prohibit all surface coal mining in Custer National Forest would be consistent with the purpose of the statute to limit the destructive effects of surface coal mining on the environment. As we have seen, the Proviso was adopted as part of a legislative compromise which had as its general purpose the expansion rather than the limitation of permissible surface mining operations in the national forests. In addition, a narrow reading of the Proviso serves a strongly held congressional purpose to limit the costs associated

with the implementation of the Act by avoiding inverse condemnation of private rights that would require the payment of just compensation. This purpose is reflected in the provision of subsection (e) making the ban on strip mining "subject to valid existing rights," and confining the ban in national forests to "Federal lands." It has been reaffirmed in the Secretary's current regulations, which define "valid existing rights" as including any property interest as to which application of any prohibition in the Act would effect a taking entitling the owner to just compensation under the Fifth Amendment. 30 C.F.R. § 761.5 (1987).[10] An exchange during the House debate concerning an amendment proposed by Representative Roncalio of Wyoming is particularly revealing. Mr. Roncalio proposed to strike the following sentence from the provision now codified at 30 U.S.C. § 1281(d): "Valid existing rights shall be preserved and not affected by such designation." 123 Cong.Rec. 12,878 (1977). In offering the amendment, Mr. Roncalio recognized that "[t]here are those who may be reluctant to approve my amendment saying that this would amount to a 'taking' and that the Government would in turn be liable for reimbursement and other associated costs." *Id.* As Mr. Roncalio anticipa-

---

**7.** The House Report states:

As [30 U.S.C. § 1272(e)] prohibits surface coal mining on lands within the boundaries of national forests, subject to valid existing rights, *it is not the intent, nor is it the effect of this provision to preclude surface coal mining on private inholdings within the national forests.*

H.R.Rep. No. 218, 95th Cong., 1st Sess. 95, *reprinted in* 1977 U.S.Cong.Code & Admin.News 593, 631 (emphasis added).

**8.** The relevant excerpt of the Senate Report reads:

*All of these bans listed in subsection (e) are subject to valid existing rights.* This language is intended to make clear that the prohibition of strip mining on the national forests is subject to previous state court interpretations of valid existing rights.

S.Rep. No. 128, 95th Cong. 1st Sess. 94 (1977).

**9.** Note 36 states, "With certain specified exceptions, and subject to 'valid existing rights,' § 522(e) prohibits surface mining operations in national parks and forests...." Note 37 states,

"§ 522(e)'s restrictions are expressly made subject to 'valid existing rights.'"

**10.** The present version of 30 C.F.R. § 761.5 was promulgated on September 14, 1983. *See* 48 Fed.Reg. 41,349 (1983). The original regulation defined valid existing rights as including only those rights created by a conveyance or deed predating the Act which authorized surface mining *and* (1) where the owner had all the permits in hand before the Act became law, or (2) where the owner could show that the mining was needed for an existing, adjacent mine. 30 C.F.R. § 761.5 (1980). This regulation was questioned by the District Court for the District of Columbia, *see In re Permanent Surface Mining Regulations Litigation,* 14 E.R.C. 1083, 1090 (D.D.C. 1980), for failing to accommodate Congress' intent to recognize property rights defined by state law. The regulation was subsequently suspended. *See* 45 Fed.Reg. 51,548 (1980). In promulgating the new regulation, the Secretary stated he had "recognized from the outset that Congress created the valid existing rights exemption ... to avoid potential legislative takings...." 48 Fed.Reg. 41,313 (1983).

ted, Congressman Udall of Arizona, manager of the bill in the House, immediately responded: "Mr. Chairman, I would have to oppose the amendment because it takes from the bill a statement that valid legal rights should be preserved. I do not think we should do that without paying compensation under the fifth amendment." The amendment was rejected. *Id.*

Finally, we note that it is the view of the Secretary of Interior, whose interpretation of the statute is entitled to deference, *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985), that the Custer Proviso modifies only the exception to the strip mining ban appearing in the same paragraph of the statute. This view is reflected not only in the Secretary's position in this litigation, but also in the regulations issued by the Secretary shortly after passage of the statute. The Custer Proviso is referred to only in the portion of the regulations outlining the authority of the Secretary of Agriculture to authorize strip mining under the terms stipulated in subparagraph (B) of subsection (e)(2) of the Act. *See* 30 C.F.R. § 761.11(b)(2) (1979); *see also* 30 C.F.R. § 761.11(b)(2) (1987).

We conclude that the Custer Proviso bars only the exception to the ban on strip mining stated in paragraph (B). We decide nothing as to the application of any other provision of the Act to mining of coal deposits in Custer National Forest.

REVERSED.