Mary H. MAYNE, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 166–86L.

United States Claims Court.

Aug. 27, 1987.

Robert A. Gingell and Stedman Prescott, Jr., Wheaton, Md., for plaintiffs.

Silvia Sepulveda-Hambor, Washington, D.C., for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This contract case is before the court on dispositive cross-motions from the parties. Plaintiffs, pursuant to a contract provision, seek reimbursement of a Maryland county tax imposed on them upon the transfer of their property to defendant. Defendant argues that plaintiffs' claim is not ripe because it has not been brought before the appropriate administrative body for an initial determination.

## FACTS

On December 16, 1980 plaintiffs, members of the Mayne family, conveyed to the United States for use by the U.S. Army Corps of Engineers 65 acres of real property in Montgomery County, Maryland for $653,348. For the ten years prior to this sale, the property had been leased to defendant with a reserved right by plaintiffs for use to graze cattle. Plaintiffs received preferential tax treatment during the period of the lease in accordance with a Montgomery County tax scheme, Mont.Co.Code, Art. II, §§ 52–19 to –27 (1980), to encourage the farm use of land.[1] Upon sale of the property, plaintiffs fell subject to a "transfer tax" under section 52–21(d)(4) of the Mont.Co.Code,[2] by which the county

1. Montgomery County was authorized to enact this county tax scheme by Laws of Maryland 1968, Chapter 633. The county tax legislative scheme is set forth in Article II of the Taxation Section of the Montgomery County Code, entitled Real Property Transfer Tax.

2. Section 52–21 provides:
There is hereby levied a tax on all transfers in the county of a fee simple interest in real property ... such tax to be computed on the value of the full consideration for such transfer at one of the following rates:

\* \* \* \* \* \*

(d) A percentage of the value of the consideration for the transfer of land ... which, while owned by the transferor, has been assessed at any time during the five years preceding transfer on the basis of being actively devoted to farm or agricultural use ... said tax to be paid by the transferor of such land, which

attempted to recoup some of the revenues lost in an earlier low assessment by imposing a higher rate of tax upon sale of the farmland.

When the United States attempted to record the deed, recordation was denied because the deed lacked certification from the Tax Assessor's Office that all taxes due had been paid. Defendant refused to pay the transfer tax in question—the only tax outstanding—when informed by the Tax Transfer Department that the transferor was required to pay the tax. This transfer tax was not discussed at the closing between the parties, when the matter of accounting for payment of taxes and fees was addressed pursuant to provision (4) of the "Department of the Army Offer to Sell Real Property" (Contract).[3] Eventually, through intercession by the Maryland Attorney General's office, the deed was recorded and defendant obtained title to the property although the tax had not been paid.

In July 1981, Montgomery County demanded payment of the tax from plaintiffs, who refused, prompting the county to bring an action in the Circuit Court for Montgomery County, Maryland, against plaintiffs to recover the amount of tax due. *Montgomery County, Md. v. Mayne*, No. 58417 (Mont.Co.Cir.Ct. filed July 15, 1981), *petition for removal filed*, No. R–81–3207 (D.Md. Dec. 16, 1981). Plaintiffs joined the United States as third-party defendant and the case was removed to the United States District Court for the District of Maryland. *Id.* The district court dismissed the charges against the United States and remanded the county's case against plaintiffs to the Maryland Circuit Court. *Montgomery County, Md. v. Mayne*, No. R81–3207 (D.Md. Dec. 14, 1982). The parties subsequently settled the case under the terms of

which plaintiffs executed a promissory note for the amount of the tax, plus interest to the county, with the understanding that plaintiffs would bring the present action. On March 13, 1986, plaintiffs filed suit in this court for reimbursement of the tax plus interest accumulated under the promissory note.

Plaintiffs brought claims against defendant on two counts: (1) defendant is liable for payment of the tax under an express provision in the contract,[4] and (2) the Uniform Real Property Acquisition Policies Act, 42 U.S.C. § 4653 (1982), directs defendant to reimburse plaintiffs for the payment of the transfer tax.

## DISCUSSION

Defendant argued that the merits of plaintiffs' case cannot be reached because plaintiffs have not yet followed the procedures necessary to bring a claim under the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. §§ 4601–4655 (1982) (the Act). When a statute directs the parties to come before an administrative agency for a determination of their claims, judicial action is precluded "until an administrative decision has been formalized and its effects felt in a concrete way." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The Supreme Court has set forth two threshold questions for a court to answer when faced with an action against a federal agency: (1) is the issue fit or ripe for judicial decision; and, (2) will the parties suffer hardships by withholding court determination? *Id.* at 149, 87 S.Ct. at 1515.

### I.

■ In a dispute between a government agency and a private party, the issues

---

percentage shall vary according to the following schedule:

\* \* \* \* \* \*

(4) Land assessed and taxed to the transferor for more than three years on the basis of farm or agricultural use, six percent.
Mont.Co.Code, § 52–21(d)(4) (1980).

**3.** In provision (4), the vendor agrees to satisfy all encumbrances, assessments or liens on the property and will pay the pro rata share of taxes

on the property allocated to the period before and including the date title vests in the United States.

**4.** Provision (3) states: "It is agreed that the United States will defray the expenses incident to the preparation and recordation of the deed to the United States and the procurement of the necessary title evidence."

presented are fit for judicial review if they are ripe and if the administrative remedies available to the parties have been exhausted.

## A. *Ripeness*

 Judicial evaluation of agency action is ripe if the agency action is final and if legal issues are present. *Southern Cal. Edison Co. v. Federal Energy Regulatory Comm'n,* 770 F.2d 779, 785 (9th Cir.1985). Because plaintiffs have not presented their claim to the acquiring agency in accordance with the Act, 42 U.S.C. § 4653, and the supporting regulations of the acquiring agency, there is no agency determination of responsibility for payment of this tax, let alone final agency action for the court to consider. Therefore, the issues presented here are not ripe for judicial review.

The parties direct the court to the following language of the Act:

The head of a Federal agency, as soon as practicable after the date of payment of the purchase price ... shall reimburse the owner, to the extent the head of such agency deems fair and reasonable, for expenses he necessarily incurred for—

(1) recording fees, transfer taxes, and similar expenses incidental to conveying such real property to the United States.

42 U.S.C. § 4653 (1982).

When reading section 4653 together with other sections of the same statute,[5] the court cannot avoid the government-wide administrative scheme congress had in mind when drafting the Act which governs federal agencies which acquire real property. The express purpose of the Act is "to promote uniform and effective administration of relocation assistance and land acquisi-

tion programs or projects conducted by Federal agencies." Legislative History of the Uniform Relocation Assistance and Real Property Acquistion Policies Act, Pub.L. 91–646, § 213, 1970 U.S.Code Cong. & Admin.News (91 Stat.) 5850, 5867 (revised and codified at 42 U.S.C. § 4633). The congressional intent behind Title III of the Act provides in part, as follows:

This section establishes a uniform policy for the acquisition of real property in order to encourage and expedite acquisition by agreement with owners, to avoid litigation and relieve congestion in the courts to assure consistent treatment for owners ... and to promote public confidence in Federal land acquisition practices.

*Id.* at 5871.[6]

The Act sets forth policy guidelines which authorize agencies to prescribe regulations and procedures to assure fair and reasonable administration, prompt payment and review of grievances. 42 U.S.C. § 4633; *see also Consumers Power Co. v. Costle,* 468 F.Supp. 375, 380 (E.D.Mich. 1979), *aff'd,* 615 F.2d 1147 (6th Cir.1980) (ripeness of an appeal under the Act follows a determination by the head of the agency which precurses judicial review); *Rubin v. Department of Hous. and Urban Dev.,* 347 F.Supp. 555, 558 (E.D.Pa.1972) (administrative review procedures have been established under § 213, now § 4633); Legislative history Pub.L. 91–646 § 102, 1970 U.S.Code Cong. & Admin.News (91 Stat.) 5850, 5854 (the guidelines set forth are to limit judicial review to final orders of the agency). The U.S. Army Corps of Engineers has formulated regulations and procedures that track both the language

---

**5.** 42 U.S.C. § 4633 outlines the objectives to be achieved by the agencies' regulations and procedures which are to provide persons aggrieved by a determination as to eligibility for a payment authorized by the Act to have that determination reviewed by the head of the relevant agency.

**6.** Additional justification is found in the legislative history discussing § 4602 of the statute: The committee agrees [that judicial review] would add an unnecessary burden to the overcrowded courts.... [T]he bill provides an alternate to judicial review, by requiring the

heads of Federal agencies to establish regulations and procedures that will assure [that] any person aggrieved by a determination ... may have his application reviewed by the head of the Federal agency having authority over the project....

Legislative History of the Uniform Relocation Assistance and Real Property Acquisition Policies Act, Pub.L. 91–646, § 102, 1970 U.S.Code Cong. & Admin.News (91 Stat.) 5854–55. *See also* 32 C.F.R. § 259.1(a) (1986) (to minimize litigation and reduce congestion in the courts).

and the policy of the Act, 32 C.F.R. § 259 (1986), providing the procedural context in which to interpret the language of statutory provisions.

The purpose of the Corps of Engineers' regulations is also to ensure fair and consistent treatment to property owners, expedite acquisition, minimize litigation and relieve congestion in the courts. 32 C.F.R. § 259.1(a). The acquisition of real property and the negotiation procedures to be followed by all the parties to a transaction are also set forth with some specificity. 32 C.F.R. § 259.102. Administrative settlement of disagreements is urged as an alternative to judicial resolutions. 32 C.F.R. § 259.102(g), (i); 32 C.F.R. Part 259 app.

As stated, the parties focus the court's attention to the language of the Act whereby agencies are directed to reimburse owners for expenses "to the extent the head of such agency deems fair and reasonable." 42 U.S.C. § 4653. This determination is most properly made first by the agency, not this court. 32 C.F.R. § 259.102; 32 C.F.R. § 641.196 (1984) (now codified at 32 C.F.R. § 259.106). Such procedure furthers the purposes of the act and the agency regulations.

Under the regulations at the time of the contract, claims or disputes with respect to expenses incidental to transfer of title under 32 C.F.R. § 641.196 appear to have been appealable within the administrative agency. 32 C.F.R. § 641.291.[7] Thus, the Army Corps of Engineers has established procedures so that it may administer acquisitions and claims in accordance with the statute and so that few disputes need come before the courts. In the opinion of the court plaintiffs have not availed themselves of such procedures and the Corps has not had an opportunity to address plaintiff's claim before litigation ensued.

In accordance with the policy and intent of the Act and Corps regulations, the court believes that plaintiffs should first file an administrative claim with the U.S. Army Corps of Engineers. To hold otherwise would suppress the policy behind this provision and interfere unnecessarily in the determinations of the Corps. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Papago Tribal Util. Auth. v. Federal Energy Regulatory Comm'n,* 628 F.2d 235, 238 (D.C.Cir.), *cert. denied,* 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980).

Plaintiffs argued, however, that the court should decide their claim for two reasons. Plaintiffs first implied that agency action is unnecessary. They point to a decision by this court, *Vournas v. United States,* 10 Cl.Ct. 591 (1986), where the same Montgomery County tax was found applicable for reimbursement under the Real Property Acquisition Act. In light of that decision, plaintiffs argue that any agency determination is limited to the reasonableness of the amount of the tax, not whether the tax should be paid. Since the amount is a simple calculation, plaintiffs feel that this court can make this determination. However, *Vournas* is easily distinguishable because the plaintiffs in that case were condemnees and had brought their claim to the agency and pursued it through administrative appeals. In this case, plaintiffs chose to sell the property and to institute court action rather than first proceed through the agency.

## B. *Exhausting Administrative Remedies*

■ Generally, administrative remedies must be exhausted before judicial review is appropriate. *McKart v. United States,* 395 U.S. 185, 192–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969). This general rule is subject to several exceptions. For example, if the aggrieved party's action sets forth a constitutional issue, or alleges that the agency acted outside its authority, or establishes that administrative processes would be futile then the aggrieved party may be permitted to obtain judicial review

---

**7.** Under the present regulations claims or disputes regarding expenses incidental to transfer under 32 C.F.R. § 259.106 are appealable if "the person believes that the Agency has failed to properly determine the person's eligibility for, or the amount of, a payment required under § 259.106." 32 C.F.R. § 259.10.

without first seeking administrative review.

In this case, plaintiffs' second argument, that it would be futile to bring a claim, is also unpersuasive. Had plaintiffs taken their claim to the Corps and not met with satisfaction, they could now be bringing a timely action before the court. However, plaintiffs confuse the concepts of ripeness and exhaustion. The futility exception that plaintiffs ask the court to invoke relates to the doctrine of exhaustion of administrative remedies. Generally, there can be no exhaustion of remedies until a claim is filed, a decision made, and the agency appellate review process, at the least, begun. Plaintiffs' reliance on the line of cases that grant exceptions for futility is inappropriate because those parties, unlike plaintiff, had filed their claims with defendant and were actively exhausting their administrative remedies when faced with intransigence by agency personnel thus permitting those plaintiffs to bring ripe issues before the courts. In this case plaintiffs have not been frustrated by agency procedure because they have not yet engaged it.[8]

It is not just the convenience of coming before the agency that motivates the insistence that administrative procedures be followed. The language of the Act directs it and case law guides it. *McKart v. United States,* 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938); *Ainsley v. United States,* 8 Cl.Ct. 394, 401 (1985); *Sohio Transp. Co. v. United States,* 5 Cl.Ct. 620, 638–39 (1984), *aff'd,* 766 F.2d 499 (Fed.Cir.1985). In addition to the obvious dangers of interrupting the administrative procedure of an agency "created as a separate entity and invested with certain powers and duties," *McKart,* 395 U.S. at 194, 89 S.Ct. at 1663, the Supreme Court points to the very practical

notions of judicial efficiency that justify the doctrine of exhaustion of administrative remedies:

> A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*McKart,* 395 U.S. at 195, 89 S.Ct. at 1663. Accordingly, agency action is necessary, despite plaintiffs' interpretation of the statute to the contrary, not only for the reasons stated above, but to provide an official agency determination and factual record with respect to this tax. *Id.* at 194, 89 S.Ct. at 1663; *Ainsley,* 8 Cl.Ct. at 401; *Sohio Transp. Co.,* 5 Cl.Ct. at 638–39.

## II.

### *Hardship*

■ The court must also address the issue of whether the parties would suffer any hardship by withholding court consideration at this time. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Southern Cal. Edison Co. v. Federal Energy Regulatory Comm'n,* 770 F.2d 779, 785 (9th Cir.1985). This consideration is generally applied when the finality of an agency action is at issue. The courts will look to see if there is direct and significant impact on the parties claiming relief. *Abbott Laboratories,* 387 U.S. at 152, 87 S.Ct. at 1517; *Continental Air Lines v. Civil Aeronautics Bd.,* 522 F.2d 107, 126 (D.C.Cir.1974); *Itzcovitz v. Selective Serv. Local Bd.,* 447

---

**8.** Commentators note that it is preferable to require the exhaustion of administrative procedures because of the "importance of reflecting agency's expertise or policy preferences in the final result, probability that the agency will satisfactorily resolve the controversy without judicial review, protection of agency processes from impairment by avoidable disruption, conservation of judicial energy by avoiding piecemeal or interlocutory review, and providing the agency opportunity to correct its own errors." 4 K. Davis, *Administrative Law Treatise* § 26:1 (2d ed. 1983).

F.2d 888, 891 (2d Cir.1971). If the parties can show that the impact is direct and significant in the form of concrete legal, economic, or physical harm as a result of delay during the administrative challenge, the courts will act to relieve this harm. *Cities of Anaheim & Riverside v. Federal Energy Regulatory Comm'n,* 692 F.2d 773, 778–79 (D.C.Cir.1982).

While the impact from delay of court proceedings could arguably be a direct, concrete economic harm to the plaintiffs, the plaintiffs' own actions in the case at bar suggest that the impact is not significant. Plaintiffs have been engaged in this activity for over six years and the court does not sense urgency, at this date, from either plaintiffs' actions or their arguments. With no evidence of hardship, "only a minimum showing of countervailing judicial or administrative interest is needed if any to tip the balance against review." *Diamond Shamrock Corp. v. Costle,* 580 F.2d 670, 673–74 (D.C.Cir.1978). Plaintiffs have not argued that they would be harmed by formally seeking agency relief. Nor have plaintiffs proved to any degree of satisfaction that it would be wasteful of their time to file an administrative claim with the Corps. There is always the possibility that when plaintiffs bring their administrative claim it may be denied. This is a risk all parties take when presenting a case before a tribunal. It is necessary, however, to bring the initial claim. Should plaintiffs not meet with initial success, there are other avenues for relief available to them within the Corps' procedures.

Plaintiffs' claim under provision 3 of its real estate contract calls for interpretation of the contract language in light of § 4653 of the Act (see footnote 4). In light of the above discussion we are precluded from discussion of plaintiffs' arguments until after a proper determination by the Corps.

### CONCLUSION

If this court were to make any determination of the tax issues raised in this case, there would be significant risk of interference in the administrative process required by the Uniform Real Property Acquisition Policies Act, *i.e.,* to act for the Corps in determining the application of the Montgomery County tax would usurp its authority.

In the court's view, it is unnecessary and wasteful of the court's resources to retain this case on its docket so as to monitor administrative progress of this case. Thus, defendant's motion for summary judgment is granted and plaintiffs' motion is denied. The Clerk is directed to dismiss the complaint without prejudice to reinstatement on timely notice by plaintiffs following the necessary administrative determinations. No costs.

IS IS SO ORDERED.