**James L. LEWIS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 92–701C.

United States Court of Federal Claims.

Sept. 16, 1994.

C. Russell Twist, Arlington, VA, attorney of record for plaintiff.

Michael S. Kane, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. David M. Cohen, Director, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion to dismiss. Plaintiff, James L. Lewis, filed a complaint on October 7, 1992, pursuant to Section 619 of the Tariff Act of 1930 (19 U.S.C. § 1619). Plaintiff alleges that he provided information to defendant, the United States, which operates the United States Customs Service (hereinafter "Customs") on numerous occasions resulting in seizures of goods and the prosecution of defendants in 25 or more criminal cases beginning in 1988.[1] Plaintiff contends that he never received compensation for providing Customs with such information. Defendant argues that this court lacks jurisdiction to consider plaintiff's action, and, in the alternative, contends that plaintiff has not exhausted his administrative remedies before filing this action with the court. Oral argument was held on August 18, 1994; the parties argued the following issues before the court: (1) whether this court possesses jurisdiction to entertain claims based upon 19 U.S.C. § 1619 as amended; and (2) whether plaintiff was required to exhaust his administrative remedies before filing his complaint in this court.[2]

### Factual Background

Plaintiff alleges that as a result of confidential information he provided to Customs agent Frank Caliendo on or about December 2, 1988, Customs seized counterfeit hand-

---

1. During all relevant interactions with Customs, plaintiff used the alias James L. Lewis and the identification number SA 236CL. Plaintiff is suing under this alias to allegedly protect his identity in past, pending, and future law enforcement investigations.

2. The parties also argued plaintiff's motion to consolidate the present action, 92–701C (Lewis I), and plaintiff's second action, 94–258T (Lewis II). The court in a bench ruling found that, pursuant to Rule 77(f)(2), case number 94–258T was not related to case number 92–701C, and denied plaintiff's motion filed April 2, 1994, to consolidate both cases pursuant to Rule 42(a).

bags, watches, and cash in Cleveland, Ohio.[3] Plaintiff claims that as a result of these seizures, five defendants, including a "Jay A. Lagorin," were indicted in Cleveland.

Plaintiff further alleges that in early to mid 1989, Customs seized fifty thousand watch stems in San Francisco, California, as a result of confidential information that he provided to Customs concerning a "David Hui." According to plaintiff, this seizure led to the indictment of David Hui.[4] While defendant admits that Customs seized counterfeit merchandise from David Hui on November 20, 1989, defendant maintains that the seizure resulted from independent information obtained by Customs in San Francisco that did not originate from James L. Lewis.

Plaintiff also contends that in August 1989, Customs seized three Bank of China (New York, NY) accounts which were controlled by David Hui as a result of information provided by plaintiff.[5] Defendant denies these allegations.

Plaintiff also maintains that in the fall of 1989, Customs seized assets belonging to David Hui in California and New York including real estate, vehicles, and cash, as well as counterfeit watches, bags, and other materials as a result of confidential information provided by plaintiff.[6] Defendant denies these allegations.

Plaintiff also alleges that on or about September 15, 1988, Customs seized 50,000 counterfeit "Rolex" watch stems in San Francisco, California, as a result of confidential information provided by plaintiff.[7] Defendant denies these allegations.

Plaintiff further contends that on or about September 24, 1988, Customs seized hundreds of switch blade knives in Cleveland, Ohio, from "Steve and Glenda Wilfung" as a result of confidential information provided by plaintiff.[8] While defendant does not contest that knives were seized from Steve and Glenda Wilfung on September 28, 1988, defendant avers that these seizures resulted from independent information that did not originate from James L. Lewis.

Plaintiff also maintains that in May 1989, Customs seized $6,000 worth of switchblade knives at the Berea Fairgrounds, Berea, Ohio, as a result of confidential information provided by plaintiff concerning Steve and Gilda Wilfung.[9] While defendant admits that knives were seized from "Steve Wilfung" on April 30, 1989, defendant contends that these seizures resulted from independent information that did not originate from James L. Lewis.

Plaintiff also alleges that on or about August 1989, Customs seized an unknown quantity of counterfeit bags, watches and clothing in Boston, Massachusetts, from "Michael Mecure" as a result of confidential information provided by plaintiff.[10] Defendant denies these allegations, but avers that Michael Mecure was arrested by the Federal Bureau of

3. Plaintiff claims that the relevant Customs "SAS" numbers for these seizures are: 88 4101 0007701, 88 4101 0007801, 88 4101 0007901, 88 4101 0002001, 88 4101 0002101, 88 4101 0006101, 88 4101 0006201, 88 4101 0006501, 88 4101 0006601, and 88 4101 006701. Defendant, however, contends that the relevant SAS numbers are 89–4101–0002001 and 89–4101–002101. The court recognizes this discrepancy but does not consider it relevant for consideration on this motion.

4. Plaintiff contends that the relevant SAS number for this seizure is 88 2802 0094701. Defendant, however, states that the correct SAS number for this seizure is 90–2809–0094701.

5. Plaintiff alleges that the relevant SAS number for this seizure is 88 2802 0094701.

6. Plaintiff alleges that the relevant SAS number for this seizure is 88 2802 0094701.

7. Plaintiff maintains that the relevant SAS number for this seizure is 88 2802 0094701.

8. Plaintiff alleges that the relevant SAS numbers for this seizure are: 88 4101 0007501, 88 4101 0002801, and 88 4101 0002901. Defendant, however, avers that the relevant SAS numbers are 88–4101–0007501, 88–4101–0002801, and 88–4101–0002901.

9. Plaintiff alleges that the relevant SAS numbers for this seizure are: 88 4101 0007501, 88 4101 0002801, and 88 4101 0002901. Defendant, however, avers that the SAS numbers are 89–4101–0002801 and 89–4101–0002901.

10. Plaintiff alleges that the relevant SAS number for this seizure is 88 4101 0006401.

Investigation without any knowledge of the independent Customs investigation of Michael Mecure.

Plaintiff further contends that between June 12, 1989, and August 27, 1989, Customs seized goods on the border of Canada from "Paul Krajcovic" as a result of confidential information provided by plaintiff. Defendant denies these allegations.

Plaintiff also maintains that from late 1991 through early 1992, Jay A. LaGorin provided information, under threat of prosecution, leading to the seizure of an unknown quantity of cocaine and the prosecution of numerous defendants as a result of confidential information provided by plaintiff.[11] Defendant admits that James L. Lewis provided information concerning Jay A. LaGorin, but avers that the information that Jay A. LaGorin provided to customs did not result in further arrests or seizures. Defendant further contends that James L. Lewis has already received full payment for the information he provided concerning Jay LaGorin.

On September 19, 1992, using the source number SA 235CL, plaintiff requested compensation from Customs for the seizures listed above pursuant to 19 U.S.C. § 1619. Mr. Lewis submitted duplicate copies of the claim to Customs' Cleveland and San Francisco regional offices for processing. Plaintiff maintains that to date, he has not received any compensation for the confidential information he provided regarding the violation of customs and navigation laws leading to the forfeiture of the property listed above. Plaintiff claims that his claim would be severely prejudiced because of an apparent campaign of retaliation by Customs' officials. Plaintiff therefore argues that because of this adversarial relationship with Customs, he should be excused from exhausting his administrative remedies due to futility. Defendant contests this assertion and claims that Customs never represented to Mr. Lewis that his claims would be denied or that they would not be processed in the usual manner. Approximately three weeks after filing his claims with Customs, plaintiff filed a complaint in this court on October 7, 1992.

## Discussion

### I. Jurisdiction

■■■ In ruling of a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the court must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Hamlet v. United States*, 873 F.2d 1414, 1415 (Fed.Cir.1989); *Farmers Grain Co. of Esmond v. United States*, 29 Fed.Cl. 684, 686 (1993). A plaintiff must make only a *prima facie* showing of jurisdictional facts through the submitted material in order to avoid a defendant's motion to dismiss. *Raymark Indus., Inc. v. United States*, 15 Cl.Ct. 334, 338 (1988) (citing *Data Disc, Inc. v. Systems Tech. Assoc. Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977)). If the undisputed facts reveal any possible basis on which the non-moving party might prevail, the court must deny the motion. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988). If the motion challenges the truth of the jurisdictional facts alleged in the complaint, however, the court may consider relevant evidence in order to resolve the factual dispute. *Rocovich v. United States*, 933 F.2d 991, 994 (Fed.Cir.1991). "The court should look beyond the pleadings and decide for itself those facts, even in dispute, which are necessary for a determination of [the] jurisdictional merits." *Farmers Grain Co. of Esmond*, 29 Fed.Cl. at 686 (citing *Raymark*, 15 Cl.Ct. at 335).

### A. 19 U.S.C. § 1619 (1986)

To invoke the jurisdiction of this court, plaintiff must base his claim "either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). In this action,

---

11. Plaintiff alleges that the relevant SAS numbers for these seizures are: 88 4101 0007601, 88 4101 0001901, 88 4101 0002201, and 88 4101 0002301.

plaintiff bases his substantive right on statutory authority contained in 19 U.S.C. § 1619 (1986). Plaintiff claims that 19 U.S.C. § 1619, which authorizes the award of compensation to informers, is money-mandating and, therefore, capable of invoking the jurisdiction of this court. *See United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Rickard v. United States*, 11 Cl.Ct. 874 (1987).

■ The test of whether the United States Court of Federal Claims can entertain a suit pursuant to the Tucker Act, 28 U.S.C. § 1491, is whether the statute establishes a substantive right to compensation. If the language and effect of the statute is mandatory, then the court possesses jurisdiction to hear the case based on that money-mandating statute. If, on the other hand, the language of the statute is permissive in scope and effect, the statute does not grant jurisdiction to hear the case in this court. *Rickard*, 11 Cl.Ct. at 876; *Eastport Steamship Corp. v. United States*, 372 F.2d 1002, 178 Ct.Cl. 599, 607 (1967).

■ Prior to the 1986 amendment, it was well established that this court had jurisdiction to entertain claims for compensation pursuant to 19 U.S.C. § 1619.[12] *Rickard*, 11 Cl.Ct. 874; *Allen v. United States*, 229 Ct.Cl. 515, 1981 WL 22043 (1981); *Lacy v. United States*, 607 F.2d 951, 221 Ct.Cl. 526 (1979); *Tyson v. United States*, 32 F.Supp. 135, 91 Ct.Cl. 139 (1940). This court and its predecessors consistently rejected arguments that the statutory use of the word "may" in § 1619 was discretionary and permissive. *Rickard*, 11 Cl.Ct. at 878; *Allen*, 229 Ct.Cl. at 519. *Wilson v. United States*, 135 F.2d 1005, 1009 (1943). In so holding, the courts recognized that "Congress did not intend to leave to the caprice or whim of the Secretary an informer's right to the award." *Rickard*,

11 Cl.Ct. at 877 (citing *Tyson*, 32 F.Supp. 135, 91 Ct.Cl. at 141–42). Thus, this court and its predecessors concluded that 19 U.S.C. § 1619 was intended to "confer upon the informer an *absolute right* to demand payment of the award when he had met conditions precedent thereto laid down by Congress." *Id.* (emphasis added).

As amended, 19 U.S.C. § 1619 provides in relevant part: "If any person who is not an employee or officer of the United States ... furnishes to a United States attorney, the Secretary of the Treasury, or any customs officer original information concerning any fraud upon the customs revenue, or any violation of customs laws or the navigation laws which is being, or has been, perpetrated or contemplated by any other person; and ... such information leads to a recovery of any duties withheld, or any fine, penalty, or forfeiture of property incurred; the Secretary *may award and pay such person an amount that does not exceed 25 percent* of the net amount so recovered." 19 U.S.C. § 1619(a) (emphasis added).

As the language of the 1986 amendment demonstrates, 19 U.S.C. § 1619 confers broad discretion on the Secretary to award and pay an informer an amount that does not exceed 25 percent of the net amount recovered. *Id.* This newly authorized discretion permits Customs to determine an appropriate incentive to encourage informants to supply information in diverse sets of circumstances. H.R.Rep. No. 794, 99th Cong., 2d Sess. 6, 16–17 (1986).

During oral argument, defendant averred that if this court continues to interpret this statute as money mandating, "it's tantamount to asserting that the 1986 amendment had no purpose whatsoever." [13] Plaintiff, on the other hand, asserts that the statute *continues* to mandate an absolute right to a 25% recovery.

---

12. Prior to amendment, 19 U.S.C. § 1619 read in pertinent part: "Any person not an officer of the United States who ... furnishes to a United States attorney, to the Secretary of the Treasury, or to any customs officer original information concerning any fraud upon the customs revenue, or a violation of the customs laws or the navigation laws, perpetrated or contemplated, which detection and seizure or information leads to a recovery of any duties withheld, or of any fine, penalty, or forfeiture incurred, *may be awarded*

and paid by the Secretary of the Treasury a compensation of 25 per centum of the net amount recovered, but not to exceed $50,000 in any case, which shall be paid out of any appropriations available for the collection of revenue from customs." 19 U.S.C. § 1619 (1976) (emphasis added).

13. Oral Argument Transcript at 6 (Tr.).

Neither parties' arguments, however, are persuasive. Instead, the court finds that while the 1986 amendment permits Customs to utilize a sliding scale when determining the appropriate amount of an award for an informant, the statute continues to mandate the payment of some award. Thus, contrary to defendant's beliefs, the 1986 amendment had, in fact, a purpose: to provide the Secretary with discretion to make awards on a case by case basis, and the authority to award compensation on a fluctuating scale rather than a mandatory 25%. Indeed, like the previous statute, the amended version of 19 U.S.C. § 1619 cannot be interpreted as a permissive or discretionary award allocation. Further, in court decisions before the 1986 amendment, the statute was interpreted as to its use of the word "may." As this court and its predecessors have already determined, the statutory use of the word "may," while ordinarily permissive, is given a mandatory meaning in 19 U.S.C. § 1619. *Rickard*, 11 Cl.Ct. at 878; *Allen*, 229 Ct.Cl. at 519; *Wilson*, 135 F.2d at 1009. The rationale for this interpretation is as persuasive today as when it was first announced in 1943. "An informer would have little incentive to give original information upon occasions at considerable personal risk to officers of the United States if his compensation rested in the absolute discretion, almost, one might say, in the whim, of an executive officer." *Wilson*, 135 F.2d at 1009. As noted above, the 1986 amendment merely attempted to alter the level of incentives offered to informants, and in fact did not alter the wording of the section except to provide the Secretary more leeway as to the exact amount of the reward. In no way can the amendment be interpreted, however, to provide zero compensation for original information. Such an arbitrary interpretation would destroy the informant's monetary incentive and severely curtail the quality and quantity of original information received by Customs. Thus, contrary to defendant's assertions, if an informant provides original information and complies with the statute in all other ways, Customs does not possess the discretion to make no award at all.[14]

14. See Tr. at 10.

■ Since the history of 19 U.S.C. § 1619 and the established precedent clearly indicate that Customs must provide some level of award to informants under the 1986 amendment, the statute remains sufficiently "money-mandating." *See Rickard*, 11 Cl.Ct. at 876. Accordingly, this court clearly has proper subject matter jurisdiction to hear this action.

## II. *Exhaustion of Administrative Remedies*

The doctrine of exhaustion of administrative remedies (exhaustion doctrine) provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938); *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). This court has determined that administrative remedies are not considered to be exhausted until "a claim is filed, a decision made, and the agency appellate process, at the least, begun." *Mayne v. United States*, 13 Cl.Ct. 60, 65 (1987).

The courts have proffered several persuasive rationales for the exhaustion of remedies doctrine including: the special competence of agencies in carrying out tasks assigned to them by Congress, *Schlesinger v. Councilman*, 420 U.S. 738, 756–57, 95 S.Ct. 1300, 1312–13, 43 L.Ed.2d 591 (1975), the importance of allowing agencies a chance to fully develop the relevant facts and correct errors internally before a decision becomes final, *Id.*; and the conservation of judicial resources through the avoidance of piecemeal or interlocutory review, *Mayne*, 13 Cl.Ct. at 65.

■ Despite the compelling justifications for the exhaustion doctrine, the courts have also recognized several important exceptions. First, if the statute does not specifically mandate the exhaustion of remedies, then the reviewing court has jurisdiction over claims filed by aggrieved parties who failed to exhaust their administrative remedies. *Halas v. United States*, 28 Fed.Cl. 354, 361 (1993);

*see also Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976); *compare St. Vincent's Medical Center v. United States,* 32 F.3d 548 (Fed.Cir.1994). In addition, "[i]f the aggrieved party's action sets forth a constitutional issue, or alleges that the agency acted outside its authority, or establishes that administrative processes would be futile then the aggrieved party may be permitted to obtain judicial review without first seeking administrative review." *Mayne,* 13 Cl.Ct. at 65.

■ While defendant cannot point to any express provision of the statute to support this contention, it argues that this statute clearly requires exhaustion of remedies. The court cannot agree. Many statutes have specific and articulating formulas which expressly set forth requirements for exhaustion of administrative remedies. *See e.g.,* 42 U.S.C. § 1395oo (1988); 41 U.S.C. §§ 601 *et seq.* (1988). As is plain from its text, 19 U.S.C. § 1619 does not explicitly mandate the exhaustion of administrative remedies as a prerequisite to suit. Thus, in accordance with *Halas,* this court retains the discretion to refrain from applying the exhaustion doctrine. *Halas,* 28 Fed.Cl. at 361. The remaining question, therefore, is whether application of the exhaustion doctrine would be appropriate in this particular case.

■ Plaintiff filed his complaint in this court less than three weeks after submitting his claim to Customs. Plaintiff contends that he chose to file suit at this time due to a concern that the statute of limitations might be in jeopardy. At that time, Customs had yet to reach a decision on plaintiff's claim. Defendant maintains that this three week period was not a sufficient amount of time for Customs to reach a decision regarding plaintiff's claim. As a result, defendant contends that plaintiff's suit in this court is premature because plaintiff failed to exhaust his administrative remedies.[15]

While three weeks does appear to be an inadequate amount of time to exhaust one's administrative remedies, there is no standard that can be applied to determine how much time must pass before a plaintiff can assume that his Customs claim has been denied. Indeed, the relevant Customs regulations concerning claims for awards of compensation for informers never address this important issue. *See* 19 C.F.R. §§ 161.11–161.16, compare Contract Disputes Act 41 U.S. §§ 601 et seq. In such circumstances, plaintiff could not be expected to wait indefinitely for a decision from Customs.

Plaintiff's belief that it would be futile to wait for an administrative decision from Customs provides another reason for this court to refrain from applying the exhaustion doctrine in this case. Plaintiff maintains that several Customs officers demonstrated hostility, bad faith, and prejudice towards him at the time he filed his claim for compensation. Given this pattern of behavior, plaintiff believed that waiting for an administrative determination would be futile. While futility is often difficult to prove due to the necessary level of speculation involved, plaintiff's allegations are well supported in plaintiff's supplemental brief.

Thus, for the foregoing reasons, this court will exercise its discretion and maintain jurisdiction over plaintiff's claim even though he failed to exhaust his administrative remedies. Nevertheless, due to the problems inherent in the review of an administrative claim without a final determination, the court will stay the action and allow Customs a reasonable amount of time, six months from the date this opinion is filed, to reach a decision on this matter. After affording Customs an opportunity to act on plaintiff's claims, this court will be better able to review the agency's determination without infringing on the agency's authority. Of course, if Customs fails to reach a decision in accordance with this decision, the court will need to indepen-

---

15. During oral argument defendant argued that once plaintiff filed his complaint in this court, Customs no longer retained authority to make decisions on plaintiff's claim. Defendant states that as interpreted, 28 U.S.C. §§ 516–520 (1988) divests an agency of authority to consider a claim once it is in litigation. *See Sharman Co., v.*

*United States,* 2 F.3d 1564, 1571 (1993). The court, without passing judgment on defendant's argument, accepts defendant's statement that Customs did not consider plaintiff's claim after it was filed in this court, "as per [attorney for defendant's] direction." Tr. at 52.

dently determine whether plaintiff is entitled to compensation pursuant to 19 U.S.C. § 1619.

### Conclusion

For the reasons stated above, defendant's motion to dismiss this action is DENIED. The court will stay this action for six months, commencing at the time this opinion is filed, allowing the United States Customs Service an opportunity to consider plaintiff's claims. Customs is further directed to provide the court by March 16, 1995, a record of the Administrative Proceedings.