Anthony **PERRI**, a/k/a Anthony Marino, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 95–359C.

United States Court of Federal Claims.

May 29, 1996.

**628**

Irwin Popkin, Shirley, New York, for plaintiff.

Elizabeth A. Rinaldo, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Richard E. Rice, Assistant Director, Washington, D.C., for defendant.

## OPINION

ANDEWELT, Judge.

### I.

In this action, plaintiff, Anthony Perri, also known as Anthony Marino, seeks to recover $1.4 million from the Federal Bureau of Investigation (FBI) for assistance plaintiff provided FBI agents in accumulating evidence regarding a money laundering scheme. In his amended complaint, plaintiff claims that an FBI agent assigned to the Organized Crime Task Force recruited plaintiff to participate in a sting operation directed at two individuals with organized crime connections. The FBI sought to accumulate the evidence necessary to indict the two individuals for violations of 18 U.S.C. §§ 1956 and 1957 as well as for violations of criminal drug laws, and then to obtain forfeiture of a farm owned by one of these individuals. The FBI's operation was successful and the United States secured title to the 97–acre farm, which it later sold at an auction for $5.6 million.

In his amended complaint, plaintiff sets forth two alternative legal theories for his entitlement to $1.4 million. First, plaintiff alleges that the FBI is obligated under 28 U.S.C. § 524(c)(1)(B) to pay plaintiff one-quarter of the $5.6 million the United States received as a result of plaintiff's assistance in the FBI sting operation. Second, in the alternative, plaintiff alleges that the FBI

agent with whom plaintiff dealt had the authority to obligate the United States to pay a reward to plaintiff and exercised that authority when the agent agreed to pay plaintiff one-quarter of the value of the proceeds from the sale of the forfeited property. In response to the amended complaint, defendant filed a motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction.

### II.

The Tucker Act, 28 U.S.C. § 1491(a)(1), defines this court's jurisdiction over monetary claims based on an alleged violation of a federal statute and provides that the "Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon ... any Act of Congress...." In *United States v. Testan*, 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976), the Supreme Court scrutinized the scope of this court's Tucker Act jurisdiction. The Court explained that the United States, as sovereign, is immune from suit except to the extent it consents to be sued and that such consent "cannot be implied but must be unequivocally expressed." *Id.* at 399, 96 S.Ct. at 953–54 (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969)). Analyzing the terms of the Tucker Act, the Court concluded that the Tucker Act itself does not waive sovereign immunity so as to authorize suits against the United States based on a violation of an act of Congress. Rather, the Court explained, the Tucker Act is "only a jurisdictional statute [and] does not create any substantive right enforceable against the United States for money damages." *Id.* at 398, 96 S.Ct. at 953.

Thus, for this court to possess Tucker Act jurisdiction over an action alleging a violation of a federal statute, a substantive right to secure compensation for that violation must exist outside the Tucker Act. The *Testan* Court explained that when looking for such a right outside the Tucker Act, "the ... entitlement to money damages depends upon whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sus-

tained.'" *Id.* at 400, 96 S.Ct. at 954 (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)). Hence, defendant's jurisdictional attack on plaintiff's first legal theory requires this court to determine whether Section 524(c)(1)(B) can fairly be interpreted as mandating compensation to plaintiff.

### III.

Section 524(c), in pertinent part, provides:

(1) There is established in the United States Treasury a special fund to be known as the Department of Justice Assets Forfeiture Fund [ (the Fund) ] which shall be available to the Attorney General without fiscal year limitation for the following law enforcement purposes—

\*   \*   \*   \*   \*   \*

(B) the payment of awards for information or assistance directly relating to violations of the criminal drug laws of the United States or of sections 1956 and 1957 of title 18, sections 5313 and 5324 of title 31, and section 6050I of the Internal Revenue Code of 1986;

(C) at the discretion of the Attorney General, the payment of awards for information or assistance leading to a civil or criminal forfeiture involving any Federal agency participating in the Fund;

\*   \*   \*   \*   \*   \*

(2) Any award paid from the Fund for information, as provided in paragraph (1)(B) or (C), shall be paid at the discretion of the Attorney General.... Any award for information pursuant to paragraph (1)(B) shall not exceed $250,000. Any award for information pursuant to paragraph (1)(C) shall not exceed the lesser of $250,000 or one-fourth of the amount realized by the United States from the property forfeited.

Plaintiff alleges that his claim fits within Section 524(c)(1)(B) because he provided "assistance directly relating to violations of the criminal drug laws of the United States" and that Section 524(c)(1)(B) can fairly be interpreted as mandating compensation for his assistance. In *Hoch v. United States,* 33 Fed.Cl. 39 (1995), the court analyzed Section 524(c)(1)(B) and concluded, contrary to plaintiff's interpretation, that Section 524(c)(1)(B) is not "money mandating" as that phrase is used in *Testan.* This court agrees generally with the court's analysis in *Hoch.*

Plaintiff, however, rests his claim on a legal argument not addressed in *Hoch* that focuses on the wording of Section 524(c). Plaintiff's argument proceeds as follows. Section 524(c) covers awards in four distinct circumstances: when an informant provides (1) assistance directly relating to the violation of the criminal drug laws of the United States or other listed laws (Section 524(c)(1)(B)); (2) information (as opposed to assistance) directly relating to the violation of those same laws; (3) assistance leading to a civil or criminal forfeiture involving any federal agency participating in the Fund (Section 524(c)(1)(C)); and (4) information leading to those same types of forfeitures. Section 524(c) specifically provides that awards under categories (2)–(4) shall be paid "at the discretion of the Attorney General." (In fact, for information leading to a forfeiture, Section 524(c) so provides twice in subsections (c)(1)(C) and (c)(2).) Plaintiff argues that because Section 524(c) specifies Attorney General discretion for three award categories but not for awards involving assistance relating to criminal drug law violations, this court should infer that Congress intended the grant of awards in the latter category to be mandatory.

### IV.

Plaintiff's proposed statutory interpretation has initial appeal. When interpreting a statute, a court ordinarily should attempt to give independent meaning to each distinct provision in the statute. *See Boise Cascade Corp. v. U.S. E.P.A.,* 942 F.2d 1427, 1432 (9th Cir.1991) ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous."); *South Corp. v. United States,* 690 F.2d 1368, 1374 (Fed.Cir.1982) (en banc). Plaintiff's proposed interpretation of Section 524(c) argu-

ably is consistent with this approach because it gives independent meaning to the provisions in the three award categories that specifically grant Attorney General discretion by interpreting the lack of such a provision in the fourth award category as an indication that the Attorney General lacks such discretion over awards covered thereunder.

■ Notwithstanding the initial appeal of plaintiff's argument, upon consideration of Section 524(c) as a whole, plaintiff's proposed interpretation is not convincing. Read in its entirety, Section 524(c) simply does not contain a sufficiently clear expression that Congress intended to waive sovereign immunity so as to create a substantive right to compensation whenever an individual provides assistance under Section 524(c)(1)(B). Section 524(c) does not make clear that Congress intended to treat awards for assistance under Section 524(c)(1)(B) as mandatory and therefore under a fundamentally different standard than the other awards covered in Section 524(c).

Turning to the wording of Section 524(c), as described above, plaintiff's interpretation of Section 524(c)(1)(B) is based on an inference that plaintiff asks this court to draw from the other portions of Section 524(c). But Section 524(c) contains no wording that affirmatively mandates any award by the Attorney General. Section 524(c)(1)(B) merely states that the established Fund "shall be available to the Attorney General" for "the payment of awards for ... assistance directly relating to violations of the criminal drug laws [and other listed laws]." It does not in any sense mandate that the Attorney General make an award to every individual who provides such assistance. Thus, although Section 524(c)(1) establishes a fund that is "available" to the Attorney General, it does not obligate the Attorney General to grant any award from that fund.

In addition, there is nothing in Section 524(c)(1)(B) that addresses the amount of Attorney General awards thereunder. In *Eastport S.S. Corp.*, 178 Ct.Cl. at 605, 372 F.2d at 1007, the Court of Claims explained

that for this court to possess Tucker Act jurisdiction over a claim alleging a breach of a federal statute, "the allegations must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Section 524(c)(1) cannot be read to create, "expressly or by implication, a right to be paid a certain sum" because for awards thereunder, it fails to state a specific or maximum amount and fails to specify any criteria for calculating such amounts. *See Hoch*, 33 Fed.Cl. 39; *see also Doe v. United States*, 32 Fed.Cl. 472 (1994).

The only statutory limitation in Section 524(c) covering the amount of awards thereunder is contained in Section 524(c)(2) which establishes a maximum of $250,000 in certain defined circumstances. Stating a maximum, however, does not state a "certain sum" but rather leaves the precise sum, so long as it is below that maximum, to the discretion of the Attorney General. Moreover, under plaintiff's proposed interpretation, Section 524(c)(2) applies exclusively to those situations when an individual provides information covered in Section 524(c)(1)(B) or (c)(1)(C) and not when, as plaintiff alleges, an individual provides assistance under Section 524(c)(1)(B). For awards based on assistance provided under Section 524(c)(1)(B), Section 524(c) provides no minimum, no maximum, no sum certain, or no enunciation of the criteria for establishing the amount of such awards. Given this essentially unlimited discretion allowed the Attorney General in making award decisions under Section 524(c)(1)(B), Section 524(c) cannot fairly be interpreted as containing a congressional mandate that the Attorney General grant an award whenever an individual provides "assistance directly relating to violations of the criminal drug laws [and other listed law]." There is nothing in the statute to indicate that an individual who provides assistance thereunder is entitled to an award of a certain sum, much less one-quarter of the amount forfeited to which plaintiff argues he is entitled here.[1]

---

1. Indeed, plaintiff's argument that the amount of an award under Section 524(c)(1)(B) should be based on the value of property forfeited and

should constitute one-quarter of that value would seem fundamentally at odds with the statutory scheme because awards based on forfeitures are

To support his argument that Section 524(c)(1)(B) is money mandating, plaintiff relies upon *Lewis v. United States,* 32 Fed.Cl. 59 (1994), and *Freed v. United States,* 34 Fed.Cl. 715 (1996), in which the courts concluded that 19 U.S.C. § 1619, which also involves the payment of awards to informants, is a money-mandating statute. In *Doe v. United States,* 32 Fed.Cl. 472, however, the court rejected the interpretation in *Lewis* and concluded instead that Section 1619 is not money mandating. This court need not address this discordant precedent, however, because the wording of Section 1619 differs from that of Section 524(c) such that the courts' analyses in *Lewis* and *Freed* would not apply when interpreting Section 524(c).[2] The version of Section 1619 directly preceding the version analyzed in *Lewis* and *Freed* specified a sum certain for awards thereunder (25 percent of the amount recovered, not to exceed $50,000) and had been interpreted to be money mandating. *Lewis,* 32 Fed.Cl. at 62–64; *Freed,* 34 Fed.Cl. at 718. The *Freed* and *Lewis* courts simply interpreted the amended version of Section 1619 as maintaining Congress' prior intent to mandate compensation. For Section 524(c)(1), there is no analogous legislative history that suggests any congressional intent to mandate the payment of money.

## V.

In an effort to exhaust the available tools for statutory interpretation, this court ordered the parties to file supplemental briefs discussing any pertinent legislative history of Section 524(c). The history cited by the parties shows that Section 524(c) originally permitted awards from the Fund only for information and assistance leading to forfeitures (now Section 524(c)(1)(C)) and specified that these awards were at the discretion of the Attorney General. *See* Comprehensive

Crime Control Act of 1984, Pub.L. No. 98–473, § 310, 98 Stat. 1837, 2052–53. Two years later, Congress amended Section 524(c) to include the current Section 524(c)(1)(B). *See* Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, § 1152(a)(3), 100 Stat. 3207, 3207–12. Nothing in the cited legislative history of that amendment suggests that in failing to mention Attorney General discretion, Congress intended to mandate the payment of money whenever an individual provides assistance thereunder. Nor is there evidence in the history to suggest that Congress intended to create a substantive right to compensation and thereby treat individuals who provide assistance under Section 524(c)(1)(B) under a different standard than those who provide information under Section 524(c)(1)(B) or information or assistance under Section 524(c)(1)(C). In this regard, the substantive right to compensation that would result under plaintiff's proposed interpretation of Section 524(c)(1) would potentially apply to a large number of individuals. The word "relating" in Section 524(c)(1)(B), even when modified by "directly," is broad in scope and plaintiff's interpretation arguably would obligate the Attorney General to grant some amount of compensation to every individual who provides a significant level of assistance in the detection of criminal drug law violations. If this indeed were Congress' intent, it would seem likely that the legislative history would in some way mention the significant change in statutory award procedures.

Plaintiff argues that Congress mandated awards for assistance under Section 524(c)(1)(B) even though awards in the other three categories are discretionary because providing assistance directly relating to violations of the laws listed therein poses a higher degree of risk to informants than providing information under Section 524(c)(1)(B) or information or assistance leading to a criminal

---

specifically covered in Section 524(c)(1)(C) rather than (c)(1)(B).

**2.** Section 1619 contains a clear expression of the conditions that must be met for award eligibility. As the Court of Appeals for the Federal Circuit noted:

First, the informant must provide "original information" to the Customs Service. Second, the information must result in an investigation

and prosecution of the violator that leads to an actual recovery of duties, a fine, a penalty, or a forfeiture.

*Lewis v. United States,* 70 F.3d 597, 600 (Fed.Cir. 1995). Section 524(c)(1)(B), on the other hand, contains only the amorphous "directly relating" language which this court discusses in detail below.

forfeiture under Section 524(c)(1)(C). But in the absence of either legislative history or an analytical study in support of this proposition, plaintiff's theory of hierarchy of risk is nothing more than mere speculation. Moreover, plaintiff's speculation would seem to be counter-intuitive rather than to ring true.

The risk an informant faces when helping the FBI or the Drug Enforcement Administration would seem to depend upon the nature of the information or assistance provided rather than upon whether the help is properly characterized as information or assistance or whether the help leads to a criminal forfeiture or directly relates to a violation of criminal laws. For example, if an informant provides the FBI with information directly relating to violations of the criminal drug laws and that information is known only to that informant and the target of the investigation, that informant would face a high degree of risk because the target likely would be able to deduce that the informant provided the information to the government. On the other hand, informants often can provide assistance directly relating to violations of the criminal drug laws in a manner that would not risk divulging the informant's identity, such as by participating in a stakeout to identify an individual from afar. Similarly, depending upon the circumstances, an informant could face a far greater risk in providing assistance that leads to a large criminal forfeiture from a drug kingpin (covered in Section 524(c)(1)(C)) than in providing assistance directly relating to violations of the criminal drug laws by a small-time drug trafficker (covered in Section 524(c)(1)(B)). Thus, plaintiff's speculation as to hierarchy of risk is far from compelling and provides little substantive support for plaintiff's argument that Congress intended to waive sovereign immunity for only one of the four award categories in Section 524(c).

The court cannot determine with any degree of certainty why Congress failed to include a reference to Attorney General discretion over awards for assistance provided under Section 524(c)(1)(B) that is analogous to the references contained in the portions of Section 524(c) covering the other three award categories in plaintiff's interpretation. But given the broad wording and essentially unlimited discretion allowed the Attorney General in Section 524(c)(1)(B) and the absence of any indication in the legislative history that Congress intended to create a substantive new right to compensation, it would appear that, to the extent Congress considered Attorney General discretion at all, Congress did not include such a reference in Section 524(c)(1)(B) because Congress found such an additional reference to be unnecessary or redundant. In any event, the crucial issue herein is whether Congress waived sovereign immunity so as to permit a suit against the United States for failure to grant an award for assistance provided under Section 524(c)(1)(B). As a predicate to finding such a waiver, the *Testan* Court warned that a waiver should not be inferred but must be "unequivocally expressed." 424 U.S. at 399, 96 S.Ct. at 953–54. For the reasons set forth above, Section 524(c)(1)(B) cannot fairly be interpreted as containing the requisite unequivocal expression of intent to waive sovereign immunity and thereby create a substantive new right to compensation.

### VI.

Plaintiff's alternative theory of recovery sounds in contract. Plaintiff contends that the FBI agent involved entered into a binding contract with plaintiff pursuant to which the government would pay plaintiff one-quarter of the value of any property forfeited. To establish a valid contract with the United States, a party must establish a mutual intent to contract including an offer, acceptance, and consideration passing between the parties. *Fincke v. United States,* 230 Ct.Cl. 233, 244, 675 F.2d 289, 295 (1982). In addition, the party must demonstrate that the government representative who entered the agreement had actual authority to bind the United States in contract. *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991). In his amended complaint, plaintiff in effect alleges each of these predicates and contends that the FBI agent with whom plaintiff had dealt "had full authority to obligate the defendant to pay a reward." To support its motion to dismiss for lack of jurisdiction,

defendant contests plaintiff's allegation that the agent with whom plaintiff allegedly entered an agreement had authority to bind the government in contract. Defendant presents an affidavit from James J. Jasinski, Unit Chief of the Contract Review Unit and designated contracting officer for the FBI. In his affidavit, Jasinski states that the FBI agent with whom plaintiff allegedly contracted is not on the list of FBI employees who have contracting authority.

Although defendant's motion to dismiss is couched as an attack on this court's jurisdiction, defendant's motion, as it relates to plaintiff's contract claim, would appear more properly characterized as directed at the merits of plaintiff's amended complaint. In any event, regardless of the proper characterization of defendant's motion, plaintiff has stated that he needs an opportunity to take discovery on the issue of contracting authority. Accordingly, it is hereby ORDERED:

1. The court will allow plaintiff until July 26, 1996, within which to complete discovery on the issue of contracting authority.

2. On or before August 9, 1996, plaintiff shall file a brief addressing this issue.

3. On or before August 21, 1996, defendant shall file any response.